## THE YORK-DRAPER MERCANTILE COMPANY v. BENJAMIN LUSK.

1. CONTRACT — *Breach* — *Measure of Damages.* In an action by the buyer against the seller for breach of contract for the delivery of corn, the measure of damages is, as a general rule, the market value of the corn at the time and place of delivery, less the contract price.

2. RULE — *Measure of Damages.* In such case, when the seller, after his contract of sale is made, notifies the buyer that he will not fill the contract, *held*, that in the absence of any evidence on the part of the defaulting seller, that the buyer, after notice that the seller would not fill the contract, and before date of delivery, could have purchased corn in the market of the place of delivery upon such terms as to have mitigated his loss, the measure of damages remains the same.

*Error from Rice District Court.*

THE opinion states the case.

*M. A. Thompson,* for plaintiff in error.
*C. F. Foley,* for defendant in error.

Opinion by STRANG, C.: August 2, 1887, the defendant contracted to sell and deliver to the plaintiff at Dodge City, Kansas, all the corn he then owned, at 80 cents per hundred pounds. The said corn was in crib at Stafford, Kansas, and amounted to 5,091 bushels, or 285,096 pounds. The jury found that the corn was to be delivered in a reasonable time. On the same day, August 2, after the contract was completed between the parties, the defendant wrote a letter to the plaintiff at Dodge City, which was received there on the 3d, notifying it, the plaintiff, that he would not deliver the corn at 80 cents per hundred pounds, but said he would deliver it at 85 cents per hundred. And on the next day, August 3, the defendant wrote the plaintiff at Dodge City, that he would not deliver the corn at 85 cents, which letter was received by plaintiff August 4. On August 3, corn was worth 80 to 85 cents per hundred at Dodge City. August 8, it was worth $1

per hundred, and continued at that price until the 1st of September, when it went to $1.15.

At the September term, 1888, the case was tried by a jury, which gave a verdict for the plaintiff for $153.31. The plaintiff filed a motion for a new trial, which was overruled.

The only question in the case is, What is the proper measure of damages? The plaintiff claimed the measure of damages was the difference between the contract price, and the price of corn at the time and place of delivery, and asked the court to so charge the jury. The court refused to charge the jury as requested, and instructed them that the measure of damages was the difference between the contract price, and the price of the corn at Dodge City at the time the defendant notified the plaintiff that he would not deliver the corn. This instruction and the refusal of the court to grant a new trial are complained of as error.

It is well settled that the general rule for the measure of damages, in cases like this, is the difference between the contract price and the market value of the article purchased, at the time and place of delivery. (*Stewart v. Power*, 12 Kas. 596; *Gray v. Hall*, 29 id. 704. Where the buyer refuses to accept the goods purchased, Benjamin on Sales, lays down the rule as follows:

"SECTION 1118. The date at which the contract is considered to have been broken, is that at which the goods were to have been delivered, not that at which the buyer may give notice that he intends to break the contract, and to refuse accepting the goods." (5 M. & W. 475; 96 Ill. 13; 108 id. 170.)

We do not find the exact converse of this rule stated in Benjamin. But we know of no reason why it should not be equally the law. "The same doctrine prevails in cases where the contract is to be performed on a certain day, and before that time the vendor declines to carry out the contract." (Wood, Mayne, Dam. § 205; 8 Taunt. 540; 5 M. & W., 476.)

"The time of delivery, and not the time when the seller

gives notice that he intends to break the contract, is the rule. Thus, where the defendants renounced a contract for the delivery of iron rails, it was held that the time when the contract was to be considered as broken, was at the time of delivery." ( *Windmuller v. Pope,* 107 N. Y. 674, 14 N. E. Rep. 436.)

"If the vendor puts it out of his power to comply with his contract, by a sale of a portion of the goods to another, before the time stipulated for the delivery, the vendee is entitled to the difference between the contract price, and the market price of all the goods purchased at the time and place of delivery." (Field, Dam. § 247; *Crist v. Armour,* 34 Barb. 378.)

"In the absence of any evidence on the part of the defendants, that the plaintiffs could have gone into the market and obtained another similar contract on such terms as would mitigate their loss, the measure of damages was the sum of the difference between the contract price, and the market price at the period of delivery." (Benj. Sales, § 1333.)

"As to the effect of breach of contract of sales, when the bargain was for delivery by installments, it is held that in the absence of any evidence on the part of the defaulting seller, that the buyer could have gone into the market and obtained another similar contract on such terms as would mitigate the loss, the measure of the damages is the sum of the difference between the contract price and the market price at the several periods of delivery." (5 Wait, Act. & Def. 622; 3 Eng. R. 429; 6 id. 689, there cited.)

The rule of the last two citations requires the defaulting seller, if he wishes to take his case out of the general rule as to damages, as above stated, to show by proof that the vendee could have gone into the market and purchased the goods he wanted without loss. This seems to be a very proper rule. The goods purchased may be of a kind not readily found in the market; but if they may be had in the market, it would seem to be more in accord with fairness to require the defaulting seller to prove that the goods could readily have been procured in the market without loss to the vendee, than to require the vendee to show that he could not obtain the goods in the market.

In the case at bar, if the plaintiff could not have obtained the amount of corn purchased of the defendant, in the market, and thus saved itself from partial or total loss from defendant's default, it would be entitled to damages under the general rule. And in the absence of any proof on the part of the defaulting seller that the corn could have been purchased by the plaintiff so as to save itself, it should have been allowed its damage under the general rule, and recovered the difference between the contract price and the value of the corn at Dodge City at the time of delivery. The delivery was to be within a reasonable time. The evidence shows that it would take from one to two weeks to shell and deliver the corn. The average time as fixed by the evidence would probably be a reasonable time. The average time would, under the evidence, be about ten days. Considering then the reasonable time for delivery to be ten days, the measure of damages would be the difference between the contract price and the value of the corn at Dodge City about the 13th of August, 1887. But as this case goes back for a new trial, the question of reasonable time will be one for the jury.

There is another matter we desire to call attention to which should have some force in this case. The defendant, after accepting, by wire on August 2, 1887, the proposition of the plaintiff to purchase all his corn at 80 cents per hundred, wrote it a letter which was received by it the next day, in which he said he would not fill the contract at 80 cents per hundred, but would fill it at 85 cents. On the 3d he wrote plaintiff another letter, received by it at Dodge City on the 4th, in which he said he would not fill the contract at 85 cents, and did not state any price at which he would fill it. Under such circumstances the plaintiff could hardly know what to do, as it did not know how soon it might receive another declaration from the defendant, and it may be questioned whether, if this case had been, in other respects, taken out of the general rule, the general rule should not still apply, because of the uncertainty as to what the defendant would do.

Under the circumstances of this case, we recommend that it be reversed, and sent back for a new trial.

By the Court: It is so ordered.

All the Justices concurring.