No. 19,690.        .

B. STRONG, Doing Business as the B. Strong Grain & Coal Company, *Appellant,* v. G. W. RINGLE, *Appellee.*

### SYLLABUS BY THE COURT.

1. CONTRACT—*Purchase of Grain—When Usage or Custom Governs Formation of Contract.* When parties have undertaken to conclude a contract, the formation of which is governed by general usage, the implication is they intended to proceed according to the usage, if nothing be said to the contrary.

2. SAME. The foregoing rule applied to a general custom in the grain business to verify the result of oral negotiations conducted by means of the telephone by written confirmation.

Appeal from Coffey district court; WILLIAM C. HARRIS, judge. Opinion filed November 6, 1915. Reversed.

*L. H. Hannen,* of Burlington, *R. M. Hamer,* and *H. E. Ganse,* both of Emporia, for the appellant.

*Joe Rolston,* of Burlington, *G. H. Lamb,* and *W. E. Hogueland,* both of Yates Center, for the appellee.

The opinion of the court was delivered by

BURCH, J.: The action was one to recover overpayments made on purchases of wheat. The plaintiff recovered a portion only of the amount claimed and appeals. Several similar transactions were involved and a consideration of one disposes of all.

On July 12, 1912, the plaintiff's agent at Coffeyville had a telephone conversation with the defendant at Leroy, the result of which was the purchase by the plaintiff from the defendant of two cars of wheat, to be billed according to instructions, the ultimate destination of the wheat, however, being St. Louis, Mo., or East St. Louis, Ill. Pursuant to a general custom in the grain business, with which the defendant was familiar, the plaintiff, on July 12, sent the defendant a written confirmation

of the purchase, the material portions of which read as follows:

"PURCHASE CONTRACT.

6971                    COFFEYVILLE, *Kans.*,......July 12th......*1912*.

G. W. Ringle,

    Leroy, Kansas.

*Gentlemen:—This confirms purchase from you today by* telephone
*as follows:*

Two 60000# cars #2 red wheat, *market differences for lower grades
date of inspection, basis of* 91½c——*per bus. F. O. B.* Leroy, Kansas.
*Station* Mo. P. *track. Shipment on or before* July 20th 1912 *destination
official weights destination official grades.*

*Billing instructions:* S/O notify B. Strong Grain & Coal Co., St.
Louis, Mo."

A printed form of confirmation was used, the blanks of which were filled with typewriting. The printed portion is indicated by italics.

The defendant received the confirmation the following day, read it, retained it without objection, and subsequently shipped grain according to the billing instructions given. The custom required the defendant on receipt of the confirmation to object to its terms if they were not correct and to notify the plaintiff he would not ship on such terms. At the time of shipment drafts were drawn on the plaintiff for the price of the grain, leaving a small margin for difference between invoice and destination weights, which drafts the plaintiff paid. The wheat did not grade No. 2 red on official inspection at St. Louis, and the plaintiff sued for the market difference for the lower grade at the date of inspection.

At the time of the trial, in April, 1914, the plaintiff's agent had no clear recollection of the transaction independent of his office records and the custom of the business. The defendant, however, undertook to state in detail the very words used in the telephone conversation, and testified in substance that he expressly refused to sell on the basis of St. Louis official grades, whereupon the plaintiff's agent agreed to accept the wheat which the defendant was offering. The court instructed the jury that "custom can not make a contract," and that if a complete oral contract were made by means of the telephone conversation the defendant was not bound to reject the confirma-

tion or advise the plaintiff that shipment would not be made pursuant to it, and the only material feature of the confirmation was the billing instructions. The jury found specially the existence of the custom and the facts making it applicable to the transaction, but found the telephone conversation to have been as the defendant stated it. The verdict was for the small sum admitted to be due the plaintiff, and judgment was rendered accordingly.

The portion of the instruction quoted above was doubtless suggested by a statement occurring in the syllabus and the opinion in the case of *McSherry v. Blanchfield,* 68 Kan. 310, 75 Pac. 121. The defendant's brief makes this court say, "usage or custom cannot make a contract when the parties themselves have made one." The language of the court was, "usage or custom cannot make a contract when the parties themselves have made none." (p. 312.) It is true that the terms of an express contract cannot be contradicted by proof of an antagonistic custom. It is likewise true, however, that custom may make a contract in the sense that it may define the rights and duties of the parties with respect to a matter upon which the contract is silent. The rule is well stated by the supreme court of the United States in the case of *Robinson v. United States,* 80 U. S. 363:

"Parties who contract on a subject-matter concerning which known usages prevail, by implication incorporate them into their agreements, if nothing is said to the contrary." (p. 366.)

The custom of grain dealers is not invoked here to make a contract between the parties or to contradict any contract they did make. There was a contract, and the question is, What were its terms? The parties now dispute about some of them. In order to avoid the consequences of misunderstandings, defects of memory, in some instances hypertrophy of memory, and in other instances equivocation or downright untruthfulness, those engaged in the grain business have adopted a method of rendering the result of their oral negotiations definite and certain. After oral negotiations have been concluded one of the parties immediately states the result in writing and submits the writing to the other for approval. It is the duty of the recipient of the writing to communicate his objections to the other party, if he have any, and to decline

performance if unwilling to be bound by it. Formal approval need not be communicated, and performance without objection constitutes assent to the correctness of the written statement of the contract. The same custom obtains in other branches of commerce and forms a self-imposed statute of frauds of the most salutary character.

In the case of *McSherry v. Blanchfield,* supra, and in the case of *Atkinson v. Kirkpatrick,* 90 Kan. 515, 135 Pac. 579, the proper office of usage and custom was touched upon far enough for the purpose of those decisions, and a few pertinent authorities were cited. The subject was by no means exhausted. The general function of usage and custom is definition, explanation, elucidation. Whenever the matter is clear there is no function to be performed. Usually proof of custom is offered to elucidate the true intention of parties to contracts whose oral or written expressions, whatever they may have been, are known. The custom under consideration is informed by essentially the same spirit and fulfills essentially the same office. By entering into the relations of contracting parties at their very inception it clarifies them before complications arise and establishes intention beyond the need of definition, explanation or elucidation, and beyond dispute. It is, therefore, good business, good morals, and good law that when parties undertake to conclude a contract, the formation of which is governed by general usage, the implication is they intended to proceed according to the usage if nothing be said to the contrary.

The position of the defendant is that the plaintiff put a "joker" in the written confirmation and now seeks to bind the defendant by a contract which he refused to make. This, of course, begs the entire question. The very purpose of the custom is to eliminate all possibility of "jokers" by securing an agreed statement of the terms of the contract in advance of performance.

The judgment of the district court is reversed and the cause is remanded with direction to ascertain the amount the plaintiff should recover under the terms of the portion of the written confirmation printed above and to render judgment in favor of the plaintiff therefor. It ought not to be necessary to impanel a jury for this purpose.