### No. 22,780.

H. L. STRONG, doing business as THE STRONG TRADING COMPANY, *Appellant and Appellee,* v. G. W. THURSTON and G. WAYNE THURSTON, Partners as G. W. THURSTON & SON, *Appellees and Appellants.*

#### SYLLABUS BY THE COURT.

1. GRAIN CONTRACT—*Initiated by Telephone—Confirmation by Letter—Instruction.* The rule that in certain circumstances the receipt without objection of a letter of confirmation undertaking to state the terms of an oral contract may estop the recipient to question its accuracy, was not qualified by a decision affirming a judgment appealed from upon the ground, among others, that error against the appellant had been committed by the giving of an instruction that the jury might consider confirmations sent to and received by him in determining whether or not oral contracts had previously been entered into.

2. SAME—*Petition—States Cause of Action with Sufficient Clearness.* It is not a valid objection to a petition declaring upon a contract originating in an oral agreement confirmed by a written statement of its terms, that it does not clearly show whether or not the pleader regarded the contract relied upon as one in writing. It is held that the meaning of the written confirmation here involved is not so obscure as to interfere with its enforcement.

3. SAME—*Effect of Provisions in Letter of Confirmation Different from the Oral Agreement.* One of the parties to an oral contract who receives from the other, without making objection thereto, a letter of confirmation undertaking to state its terms, where the circumstances are such that his assent is to be implied, cannot avoid the effect of any of the provisions of the writing on the ground that they differ from those of the oral agreement as pleaded by the adverse party, or relate to matters that were not mentioned therein.

4. SAME—*Contract Valid—No Wager Contract.*  A provision of a contract for the sale of grain to the effect that if delivery is not made at the date named the deal shall be considered open until the seller gives notice to the contrary, and that in the meantime upon the seller offering to deliver the buyer may elect to accept or refuse, is not open to the objection that it amounts to a mere wager.

5. SAME—*Extension of Contract—Notice of Extension.*  Under such a contract as that referred to in the foregoing paragraph, where after the seller's default the buyer gives written notice of an extension under such circumstances that the seller's assent thereto is to be implied, the resulting contract extending the time of delivery is supported by a sufficient consideration.

Appeal from Labette district court; ELMER C. CLARK, judge. Opinion filed July 10, 1920.  Modified.

*J. Graham Campbell, Ray Campbell,* both of Wichita, *Paul H. Kimball,* and *Webster W. Kimball,* both of Parsons, for the appellant.

*C. E. Pile,* and *L. E. Goodrich,* both of Parsons, for the appellees.

The opinion of the court was delivered by

MASON, J.: H. L. Strong sued Thurston and Son for damages upon two grain contracts, one for oats and one for corn. As the questions raised regarding the former include all those relating to the latter, as well as some others, only the oats contract will be discussed.  The plaintiff arranged with the defendants by telephone for the purchase from them of a car of oats for shipment on or before November 6, 1917.  He immediately sent a written confirmation which, among other things, included a provision that if the grain was not shipped within the time fixed, the contract should remain open until shipment was made or the plaintiff canceled it or bought in for the defendants' account.  The defendants failed to ship within the original time, and the plaintiff sent three notices of extension, the last expiring December 10, 1917, and then, getting no word from the defendants, bought elsewhere and sued for the difference between the market and the contract price.  The plaintiff recovered, the amount awarded him being based upon the market price on November 7.  He appeals on

the ground that under the special findings of the jury his recovery should have been based upon the market price on December 11, after the expiration of the last extension, the difference amounting to 14½ cents a bushel. The defendants contest this point, and also complain of the judgment rendered, and ask that it be entirely set aside, principally upon the ground that the written confirmation had not been assented to by them, that it did not confirm an existing contract but undertook to make a new one, and that in any event it was unenforceable because of some of its provisions.

1. The jury in answer to special questions found that a custom existed among grain dealers, which was known to the defendants, for purchasers of carload lots by telephone to send written confirmations to the seller; and that the confirmation relied upon by the plaintiff was sent by him to the defendants and received by them without objection. This confirmation concluded with a provision that in the absence of a notification to the contrary it should be understood as accepted and binding in all its terms. In this situation, the failure of the defendants to make objection was tantamount to an acceptance of the letter as a statement of the terms of a binding contract. (*Strong v. Ringle,* 96 Kan. 573, 152 Pac. 631; *Wallingford v. Grain Co.,* 100 Kan. 207, 164 Pac. 275.) The doctrine of the cases cited is in no sense qualified by anything said in *Cardwell v. Uhl,* 105 Kan. 249, 182 Pac. 415. There the seller complained of an instruction to the effect that in determining whether or not oral contracts had been entered into the jury might consider letters of confirmation sent to him, and this court held merely that no error had thereby been committed.

2. The defendants complain that the petition left it uncertain whether the plaintiff was suing on an oral or a written contract, or upon several contracts of a like undefined character. The criticism is largely verbal. Where the parties to an oral contract expressly or by fair implication agree that its terms are stated in a writing subsequently made, it is of no practical consequence whether or not the entire transaction is spoken of as the entering into a written agreement. Nor is it important that an extension of the time of performance of a contract, like any other change in its terms, may be said in a sense to create a new contract. There was no opportunity for

Strong v. Thurston.

the defendants to be in any way misled to their prejudice by the form of the pleadings.

The defendants, by inquiring what is meant by the following phrases used in the confirmation, suggest that they were obscure: "Basis—F. O. B. your track; . . . Billing—Load and call at our expense for billing; Dest. Ry. Katy." We do not regard them as unintelligible, but as the result of the case does not depend upon it we see no occasion for undertaking their interpretation.

3. The defendants assert that the written communication sent to them changed some of the terms of the oral contract pleaded and added new ones, and therefore was not a confirmation at all. The oral contract set out in the petition as amended was for a car of 1,250 bushels of No. three or better mixed oats at 56 cents track Parsons, shippers' affidavit weights, federal grades, to be billed out by November 6. The confirmation reserved to the plaintiff the right to change the destination. The provision of the oral contract implied that a shipment was to be made to some point unnamed, and the confirmation merely stated what was doubtless to be inferred—that the buyer was to give directions concerning this. The confirmation contained a provision, which was a part of the printed blank used, that the contract was not complete until shipments were received, graded and weighed at final destination. This was obviously rendered inapplicable by the insertion of these words, which conformed to the oral contract, in a blank left to show the agreement as to weight—"Shippers reliable affidavit." Various statements in the confirmation as to shipment, payment and demurrage, which are referred to as changes, are mere details in no way inconsistent with the general scope of the oral contract.

The provision of the confirmation which is most plausibly urged as a departure from the oral agreement read in part as follows: "Grain not shipped in contract time, will be considered as open contracts until shipped, or you are advised we have canceled same or bought in for your account." This was a matter not touched on in the telephone conversation, but the question as to what the relations of the parties should be in the event shipment was not made within the time stated was one about which there might be a difference of opinion. Conced-

ing that the law would define their rights with exactness in the absence of an express provision, they were privileged to make such agreement in that respect as they saw fit. The explicit statement of the effect of a failure of the seller to comply strictly with his agreement as to time was entirely pertinent to the subject, and was in the nature of an added detail of the transaction. It is a proper function of the confirmatory letter to afford assurance, not merely that there has been no mistake by either party in catching the words of the other, for instance concerning prices and amounts, but that they have the same understanding as to the obligations in detail which each has assumed. The benefit to the business world of the employment of such a device would be largely curtailed if the recipient of a purported confirmation of an oral agreement for purchase and sale could remain silent and later successfully deny any force to one of its provisions on the ground that the matter to which it relates had not in fact been previously mentioned.

4. To the provision of the confirmation which has just been quoted, was added: "If unable to ship in contract time, phone or wire us and secure our further instructions before loading and shipping, and we will then advise if we can still use on contract." The defendants claim that this addition converted the transaction into a wagering agreement, unenforceable because of that feature. Neither this provision nor anything else in the contract appears to us to suggest that an actual delivery of the oats was not intended. We take the effect of the provision under consideration to be this: If the defendants failed to make shipment within the time set they remained under an obligation to tender performance on their part at such time as they should select (unless sooner notified that the plaintiff had canceled of bought in) which offer the plaintiff might accept or reject, his selection in this regard being likely to be influenced by the then state of the market. If he accepted it, the deal would be concluded by a shipment. If he rejected it, he thereby relieved the defendants from any liability for damages for breach of the contract. He could not, after receiving such offer, insist upon the defendants paying him the difference between the contract and market price and prevent their satisfying their obligation by actual delivery of the grain.

The transaction, therefore, did not fall within the condemnation of either the common law or the statute. It was competent for the parties by agreement to make the right of the buyer to refuse the grain when offered one of the consequences of the sellers' default.

5. From November 6, the date originally fixed for shipment, until November 17, the contract stood without action by either party; then, according to the plaintiff's evidence, he, by telephone, at the request of the defendants, extended the time of shipment to November 25, sending a written confirmation to which no reply was made. Subsequent extensions were made to December 3 and December 10, confirmations being mailed and received. The jury found specifically that the plaintiff had extended the time within which the defendants might make shipment up to December 10; that the market value on November 7 was 59½ cents, and on December 11, 74 cents; and that the defendants never notified the plaintiff that they were not going to ship the oats. All conflicts of testimony on the issue regarding the extensions are therefore disposed of, and they must be regarded as effective unless some legal principle would thereby be invaded.

We see no obstacle to holding the extension agreements valid. The course of the defendants in failing to object in any way to the supplemental confirmations sent them was plainly adapted to induce the plaintiff to believe that they acquiesced in them, and they must be held to have intended the natural result of their conduct.

The original confirmation contained a provision that any change might be a part of the contract if incorporated in a written supplement, but that any verbal understanding not written in the (original) confirmation should be of no effect. We regard the incorporation of the terms of the extensions in written statements sent to the defendants and received by them without objection as amounting to their incorporation in a supplement and as giving them the force of written agreements.

Each extension operated to the advantage of the defendants. By their failure to meet their obligation with promptness they had already incurred a liability to the plaintiff for damages. His forbearance gave them renewed opportunity to discharge

all their obligations by performance. If they had at any time concluded that a further rise in price was probable, they could have brought matters to a head and avoided the risk of an increase in the amount of their loss as then indicated by buying at the market and filling the order. They could perhaps have accomplished substantially the same result by merely notifying the plaintiff that they would not make delivery, creating an immediate breach of the contract, for which the measure of damages would turn upon the then state of the market. (Note, L. R. A. 1917A, 1004, 1005.)

The situation is not the same, however, as that presented in *Flour Mills Co. v. Dirks,* 100 Kan. 376, 164 Pac. 273, where the original contract in so many words gave the buyer the right to make extensions, or in *Wichita Mill & Elevator Co. v. Liberal Elevator Co.,* 243 Fed. 99, where a rule of the Kansas Grain Dealers Association which was made a part of the contract authorized such an extension by including it as one of the options given to the buyer upon the sellers' default. But here the extension contracts, the terms of which were evidenced by the supplemental confirmations, were supported by a sufficient independent consideration in the mutual agreements of the parties. The plaintiff waived his right to close the deal before the date named, and the defendants substituted for their existing obligation to make delivery at some indefinite time to be selected by them a promise to deliver within the new period fixed.

As against the complaint of the defendants the action of the trial court is affirmed. A modification is ordered in accordance with the contention of the plaintiff—the amount of the judgment to be increased to correspond with the state of the market as it was found to be on December 11.