No. 22,824.

JOHN HAYES, *Appellee,* v. M. W. CARDWELL, *Appellant.*

SYLLABUS BY THE COURT.

1. CONTRACT — *Car Loads of Wheat — Valid Contract Completed.* The facts touching the purchase and sale of two carloads of wheat about the time the government control of wheat prices was impending and became effective September 1, 1917, examined, and held that a valid contract of sale between the vendor and purchaser was made between the parties, although the capacity of the carloads was not particularly specified, and although the matter of the capacity was the subject of some correspondence between the parties after the contract was closed.

2. SAME—*Wheat Tendered by Vendor as Per Terms of Contract—Vendee Bound to Accept.* When one grain dealer notifies another to whom he has sold two carloads of wheat of no specified capacity, and the vendee on confirmation specifies carloads of 1,000 bushels each, and the vendor promptly notifies the vendee that while an effort will be made to get carloads of that capacity, but the vendee must expect carloads of larger capacity then prevailing in that territory, and the vendee raises no further question or timely objection thereto, the vendee is bound to accept carloads of the larger, prevailing capacity if those are tendered him in conformity with the other terms of the contract.

3. SAME — *Lawful Modification of Original Contract by Agreement.* Where a vendee objects to the largeness of the capacity of a carload of wheat lawfully tendered him pursuant to his contract of purchase, the vendor may bind the vendee, by agreement, that the large carload may be sold elsewhere and a smaller carload be procured for the vendee upon a concession of further time for delivery, and such agreement is a lawful modification of the original contract, and with such modification the original contract may be enforced.

4. SAME—*No Unnecessary Delay of Vendor in Making Sale of Refused Wheat—Measure of Damages.* The facts touching the delay of the vendor in effecting a sale of a carload of wheat which the vendee had purchased and later refused to accept and pay for, examined, and no error in the judgment or measure of damages discerned therein.

Appeal from Shawnee district court, division No. 1; ROBERT D. GARVER, judge. Opinion filed October 9, 1920. Affirmed.

*Tinkham Veale,* and *Otis E. Hungate,* both of Topeka, for the appellant.

*J. Graham Campbell,* and *Ray Campbell,* both of Wichita, for the appellee.

Hayes v. Cardwell.

The opinion of the court was delivered by

DAWSON, J.:   This lawsuit arose between plaintiff and defendant, both grain dealers, over the sale of a carload of wheat. Sales of other carloads of wheat were incidentally involved.

The plaintiff was a grain dealer in Wichita and Winfield, and the defendant was engaged in the same business in Topeka. On August 3, 1917, by telephone communication the defendant purchased from the plaintiff two carloads of No. 2 hard wheat at $2.87 per bushel.   Pursuant to the custom of grain merchants, written confirmations of this sale were mailed to each other by the parties.   That of plaintiff reads:

*"M. W. Cardwell Grain Co.*                    "AUGUST 3, 1917.
       *"Topeka, Kansas.*

"We confirm sale to you today by telephone of two (2) cars No. 2 hard wheat at $2.87 per bu. basis Kansas City.   Shipment within ten days via ————.   To be billed to Topeka and routed ————.   We do not accept any liability (save for our negligence) if grain arrives otherwise than billing instructions.

"Test terms, official grades and weights to govern.   Our drafts B-L attached to be paid by you on presentation.   It is also agreed that this confirmation is part of a contract, and its acceptance without notifying us of error herein, is acknowledgment of contract as above.   We reserve the right to route all shipments, except as otherwise agreed upon.   . . .
                                   "JOHN HAYES GRAIN CO."

Defendant's confirmation reads:

*"John Hayes Grain Company,*                    "AUGUST 3, 1917.
       *"Winfield, Kansas.   . . .*

"We confirm sale two cars No. 2 hard wheat of 1,000 bushels each . . . . . . . . . . . . . at $2.87.   Basis of Kansas City.   Grade official, market's difference for lower grade.   Weights official.   Shipment prompt.   Via west of Enid on the Rock Island.   Bill to Topeka, Kansas.

"This (sale purchase) is made subject to sight draft with B. L. attached unless otherwise stated hereon.   . . .
                                   "M. W. CARDWELL GRAIN CO."

Plaintiff received defendant's confirmation the following day, and immediately wrote to the defendant—

"We note you confirm two cars 2 hard one thousand bushels each.   We will try to furnish sixty capacity cars on this contract.   .However, most of the Rock Island stuff has been running eighty capacity and it is probable that you will get eighty capacity cars."

To this reply defendant made no response, and pursuant to this contract the plaintiff, on August 9, shipped one carload of wheat, containing 66,000 pounds of wheat, about 1,100 bushels, and drew a draft upon defendant for the agreed price, less a

margin of $9 to cover discrepancy in weights and the like. Defendant honored and paid this draft and accepted this carload of wheat.

About this time Federal control of the price of wheat was foreshadowed, which caused a sharp decline in the market price. On August 10, plaintiff shipped the second carload of wheat to defendant, 87,130 pounds, or 1,452 bushels, and drew on defendant for the agreed price less a small margin for discrepancies; but defendant failed to pay, and the draft went to protest on August 13. On the same day, after plaintiff's draft had been dishonored, defendant agreed with plaintiff's Winfield agent to accept a 60,000-pounds capacity car in lieu of the larger one declined, and defendant agreed to extend the time for shipment another ten days. Thereupon plaintiff sold the larger carload elsewhere and shipped to defendant another carload, 64,800 pounds, or 1,080 bushels. Defendant received the invoice of this carload on August 16 and wired plaintiff to hold the car at Herington, and also telephoned the railway company requesting it to hold the car at Herington for diversion. The railway company complied. Next day, August 17, plaintiff's draft for the agreed price, $2,965, less margin of $35 for discrepancies, was dishonored by defendant, his stated reason being that the amount was incorrect. While the amount of the draft was not too large, the plaintiff again tendered a bill of lading for the car, with a draft reduced to $2,700. This draft was likewise dishonored. The defendant wrote to the plaintiff that because of plaintiff's failure to reduce the draft on this shipment on account of a claimed overpayment for the earlier shipment and upon another prior shipment not here concerned, "I herein cancel the contract on the third car of wheat." Plaintiff promptly notified defendant that he would not agree to such cancellation; he sold the wheat elsewhere at the then current market price; and brought this action for the difference, and for some small items of protest fees.

The trial court made findings of fact and gave judgment for plaintiff, and allowed defendant a counterclaim for overpayment on one of the earlier shipments of wheat.

Defendant appeals, contending that there was no meeting of the minds of the parties as to the amount of wheat purchased and consequently no contract; that the contract was not enforceable because it was too indefinite and uncertain; that the

Hayes v. Cardwell.

plaintiff first breached the contract by insisting that the defendant accept and pay for more wheat than he agreed to purchase, and by plaintiff's failure to deliver the amount of wheat which defendant had purchased. Another error assigned pertains to the measure of damages.

Touching the making of the contract, and its terms, the record shows that the parties by telephone closed a bargain for the sale and purchase of two carloads of wheat. Under that bargain, any ordinary carloads would answer the terms of the contract as no special carload capacity was prescribed. When defendant, in his written confirmation of the contract already made (*Commission Co. v. Mowery,* 99 Kan. 389, 161 Pac. 634, 162 Pac. 313), specified carloads of 1,000 bushels capacity, he attempted to inject a particular limitation not covered by the original bargain. The plaintiff did not assent to that limitation. He promptly notified defendant that the prevailing type of grain car in use in that part of the country was one of 80,000 capacity, and probably that was the capacity of the cars which would be furnished to him. Defendant raised no further discussion as to the capacity of the carloads which he had purchased, and he became bound to accept and pay for two carloads whether they were of the larger or smaller size. (*Strong v. Ringle,* 96 Kan. 573, 152 Pac. 631; *Wallingford v. Grain Co.,* 100 Kan. 207, 164 Pac. 275.)

There is no merit to the defendant's argument that the aggregate amount of wheat which he agreed to purchase was 2,000 bushels. It was shown by evidence that even if the carload capacity had been specified, such specification would only be an approximation, and that any carload of wheat may overrun its specified capacity by as much as ten per cent. Defendant was a grain merchant and he knew that fact; and the contention that he agreed only to buy and pay for 2,000 bushels of grain, neither more nor less, cannot be countenanced. Plaintiff was clearly within the terms of the contract when he furnished defendant the second and larger carload of wheat, but he did not need to insist on his strict legal right on that point; he might show some leniency to defendant on account of the falling price of wheat (*Dubbs v. Haworth,* 102 Kan. 603, 606, 171 Pac. 624), and he could and did lawfully agree with defendant to divert the large carload and to supply a smaller one in its stead upon defendant's expressed assent to waive the

matter of delivery within the originally specified time. The defendant's excuse for dishonoring the draft—that it was drawn for too large an amount, was ill-founded; it was not too large, and the money was then due. He should have paid it. Moreover, he had already exercised an act of ownership and dominion over the carload of wheat by causing the railway company to stop the car in Herington for diversion. It was then his carload of wheat, subject to the rights of the plaintiff for payment before surrender of the bill of lading—the evidence of title.

Nor did the item of overpayment on the earlier shipment of wheat affect the matter. That item was a subject to be settled according to the custom of grain merchants, when defendant should submit the official grades and weights pertaining to that earlier shipment. He had not submitted that data when he refused to honor the draft on the second carload of wheat.

Defendant also complains of the amount allowed plaintiff as damages. He points out the long delay which occurred after he breached the contract before the plaintiff effected a sale of the wheat elsewhere. It was not sold until September 7, and meantime the government control of wheat prices had become effective, whereas, defendant contends, if plaintiff had diligently sought a market for the wheat elsewhere it might or could have been sold with little loss to either party. But it was shown that defendant caused the railway company to hold the car at Herington. Meantime also, plaintiff, at defendant's insistence of the amount of the draft being too large, had sent another draft reduced to $2,700, and it was not until August 25 that notice of its dishonor reached him. He then acted with dispatch. He wired another grain dealer to sell the carload, but as it was held in Herington for some days pursuant to defendant's instructions to the railway company, the government price became effective September 1. The wheat was sold at that price September 7. There was some trouble about locating the car. Plaintiff did nothing to stop the car at Herington. He did not know that defendant had stopped it there. He supposed the car was in Topeka, and it was to another Topeka grain merchant that plaintiff addressed himself to sell the car. There was no unreasonable delay on plaintiff's part in seeking and effecting another sale.

No error is discernible in this case, and the judgment is affirmed.