No. 39,015

F. R. GAINES, *Appellant*, v. J. RALPH CODY, doing business as Cody Transfer & Storage Company, *Appellee*.

(263 P. 2d 252)

Opinion filed November 7, 1953.

*Max Wyman* and *Don Wyman,* both of Hutchinson, were on the briefs for the appellant.

*Roy C. Davis, Frank S. Hodge, Eugene A. White, R. Y. Jones, H. Newlin Reynolds, Abraham Weinlood, Bill R. Cole* and *Kenneth F. Ehling,* all of Hutchinson, were on the briefs for the appellee.

The opinion of the court was delivered by

PRICE, J.: This was an action to recover the value of plaintiff's household goods which were destroyed when defendant's warehouse, in which they were stored, was destroyed by fire. From a judgment in favor of defendant, plaintiff has appealed.

Briefly stated, it may be said that the petition was framed upon the theory that defendant company, through its warehouse receipt and contract, falsely and fraudulently represented the warehouse to be fireproof, when in truth and fact it was not, and that plaintiff, by reliance upon such false and fraudulent representations, suffered loss when his property was destroyed in the warehouse fire.

Plaintiff and his wife formerly resided at Stafford. In August, 1943, upon his entrance into military service, she, through a newspaper advertisement, contacted defendant company by mail concerning the storage of their household goods in defendant's warehouse in Hutchinson. Pursuant to this correspondence, defendant's employees went to Stafford, loaded the goods and hauled them to the warehouse. Plaintiff's wife went to Tulsa, Oklahoma, to live

for the duration. Up to this time neither plaintiff nor his wife had ever been at the warehouse.

On September 28, 1943, defendant mailed its "WAREHOUSE RE-CEIPT AND CONTRACT" to plaintiff's wife in Tulsa. On this printed form, immediately below the trade name of defendant, were the words "Fireproof Warehouse." The form provided:

". . . and the acceptance of this receipt and its retention for more than fifteen days after the delivery thereof shall be a conclusive acceptance of all the terms and conditions of this contract."

It also contained the following provision:

"The Company will be responsible for exercise of ordinary diligence and care; but not responsible for ordinary wear and tear in handling, nor for loss or damage to said goods caused by moth, *fire,* rust or deterioration, Acts of God, or other causes beyond its control." (Our emphasis.)

and further provided that:

". . . and in no event shall the Company be responsible except for its own negligence."

This receipt and contract was received by plaintiff's wife, and there were no further negotiations or correspondence concerning the matter. The storage rate of $5 per month was paid by plaintiff while he was in the military service. In the spring of 1946 plaintiff and his wife, for the first time, came to the warehouse, their purpose being to remove a few articles of their property from storage. This visit was uneventful insofar as any representations or conversation concerning the type of warehouse or the safety of goods stored therein were concerned.

On a Sunday morning in June, 1946, the warehouse was intentionally set on fire by an eleven-year-old boy. It, together with its contents, including the remainder of plaintiff's goods in storage, was destroyed.

At the trial, which was by the court without a jury, considerable evidence was introduced with reference to the type and construction of the warehouse building, including its "fire-resistant" qualities, and the manner and methods of maintenance by defendant's employees with respect to the care used in eliminating fire hazards in and about the building. It also was brought out that the form of receipt and contract in issue was an obsolete one formerly used by defendant in the operation of another warehouse building, and that through inadvertence the words "Fireproof Warehouse" had not been "typed out" when the instant receipt and contract was prepared and mailed to plaintiff's wife.

The court, after a recital of preliminary matters, such as the negotiations between the parties leading up to the storage of plaintiff's household goods in the warehouse, the visit to the warehouse by plaintiff and his wife in the spring of 1946, the physical description of the warehouse and its construction, and the fact of the incendiary fire in June of that year, found that plaintiff and his wife did not rely upon the words "Fireproof Warehouse" in the receipt and contract mailed to plaintiff's wife, and that defendant and its employees were not guilty of any negligence in the operation of the warehouse and used all reasonable care for the protection of plaintiff's property that any prudent warehouseman would use under like or similar circumstances.

As conclusions of law the court held that plaintiff's petition and evidence did not show any basis for an action for the recovery of the value of his property on the grounds of deceit or fraud, and that as the evidence established no negligence on the part of defendant, plaintiff was not entitled to recover.

In support of his position plaintiff contends that defendant represented the warehouse to be fireproof when, in fact, it was not, and which fact was unknown to plaintiff; that he had the right to rely on the receipt and contract which described the warehouse as being "fireproof"; that the court did not hold defendant to the proper degree of care in the management of the warehouse; that the court's findings are inconsistent, and that plaintiff had the right to rely upon the receipt and contract as written, and we are cited to numerous authorities, among them being *Wiley v. Locke,* 81 Kan. 143, 105 Pac. 11, 24 L. R. A. (N. S.) 1117; *Strong v. Ringle,* 96 Kan. 573, 152 Pac. 631; *Commission Co. v. Mowery,* 99 Kan. 389, 161 Pac. 634, and G. S. 1949, 82-102 and 121, the latter having to do with the form and terms of warehouse receipts and the degree of care required of a warehouseman, respectively.

We find no fault with the rules there announced, but the trouble with plaintiff's argument is that they simply are of no benefit to him when applied to the facts and issues before us. This was essentially a fact case. There is nothing in the evidence to indicate that plaintiff and his wife relied upon the words "Fireproof Warehouse" in the receipt and contract mailed to her. Their household goods had already been stored in defendant's warehouse prior to the time she received the form in the mail. There is nothing to indicate that plaintiff himself saw this receipt and contract until his return from

the military service in November, 1945. Furthermore, the receipt and contract specifically stated, as quoted above, that defendant was not responsible in case of fire or other causes beyond its control, and that in no event was defendant responsible except for its own negligence. G. S. 1949, 82-121, provides:

"A warehouseman shall be liable for any loss or injury to the goods caused by his failure to exercise such care in regard to them as a reasonably careful owner of similar goods would exercise, but he shall not be liable, in the absence of an agreement to the contrary, for any loss or injury to the goods which could not have been avoided by the exercise of such care."

The evidence established no agreement to the contrary, and the finding that defendant and its employees were in no respect negligent and that they exercised that degree of care required by law is amply supported by the evidence.

The ruling of the lower court was clearly correct and the judgment is affirmed.