No. 32,064

INTERNATIONAL TRADING AND RICE CORPORATION, *Appellee,* v. N. F.
BENSCHEIDT, H. BENSCHEIDT and R. J. SOPER, doing business as
the WICHITA VINEGAR AND CIDER WORKS, *Appellants.*

(41 P. 2d 737)

Opinion filed March 9, 1935.

*Jessie D. Wall* and *Austin M. Cowan,* both of Wichita, for the appellants.

*R. R. Vermilion, Earle W. Evans, Joseph G. Carey, W. F. Lilleston, George
C. Spradling* and *Henry V. Gott,* all of Wichita, for the appellee.

The opinion of the court was delivered by

SMITH, J.: This action was brought to recover damages on account of the failure of defendants to fulfill a contract to buy a carload of sugar. Judgment was for plaintiff. Defendants appeal.

Plaintiff is a sugar brokerage company in New Orleans. Defendants are partners engaged in the business of making cider and vinegar at Wichita. The Russell Brokerage Company is a brokerage company at Wichita. The contract for the breach of which suit was brought was contained in the following correspondence. On April 30, 1930, the Russell Brokerage Company wrote plaintiff:

"We were talking to the manager of the Wichita Vinegar & Cider Works of Wichita, Kansas, to-day, and he made us an offer of 4 cents on the N-grade of raw sugar and 3¾ cents on the S-grade of raw sugar, delivered Wichita or Hutchinson, Kansas, for shipment about the 15th or 20th of May.

"You forwarded them samples April 21 and the above offer is f. o. b.

Wichita, or Hutchinson, and the car will contain 600 bags, on which they will specify before the 15th, as to how much of the S-grade they will want:

"As near as they can tell now, it will be about 100 bags of the S-grade and the balance of the car in N-grade raw sugar.

"We would appreciate your advising us if you can supply them this sugar, on the above basis.

"Please send us a sample of same and advise the brokerage you will allow us."

On May 2, 1930, plaintiff sent the Russell Brokerage Company the following telegram:

"Answering letter thirteenth confirm car sugar Wichita Vinegar protecting your brokerage."

On May 3, 1930, the Russell Brokerage Company wrote the plaintiff:

"This will acknowledge receipt of your wire of May 2, confirming the car of raw cane sugars for the Wichita Vinegar & Cider Works of Wichita, Kansas.

"We will see these parties and get the exact specifications to you around the 10th of May for shipment.

"We want to thank you, very much, for confirming this order and we note that you are protecting us, on our brokerage.

"Please advise us just how much the brokerage will be on this car of raw sugars."

There is no dispute that this correspondence constituted a binding contract. The dispute arose on account of some later events.

It will be seen that under this contract defendants were to advise plaintiff about May 15 to ship the sugar and how many bags of grade N and how many bags of grade S were wanted. The directions were never given and the sugar was never shipped. Before time for ordering the sugar shipped the premises of defendants were raided by federal prohibition officers, and defendants were instructed by them not to accept more sugar or permit any to be on the premises. The sugar defendants had was seized. They were also notified their alcohol permit for making sugar vinegar would be revoked. The sugar purchased was to be used for the making of sugar vinegar. This necessitated the making of alcohol.

Plaintiff claims that it had set aside and held for shipment 600 bags of grade-S sugar and defendants failed to give the shipping order. It was not sold until January, 1931. The damages for which plaintiff prays are the difference between what defendants agreed to pay for the sugar and what plaintiff was able to sell the sugar for in January, 1931, the earliest plaintiff was able to sell it, plus storage and insurance charges. The judgment included these items.

The first error of which defendants complain is that the court fixed August 16, 1930, as the date when the contract was breached rather than May 15, the date when defendants failed to send the shipping order. Defendants urge there was a better market for the sugar on either one of the above dates than on January 5, 1931, when the sugar was sold.

The theory of plaintiff is that one of its remedies was to resell the sugar when the defendants refused to receive and pay for it, and that the proper measure of damages is the contract price less the selling price, plus the reasonable expenses incurred in caring for and preserving the sugar.

Plaintiff's evidence in the case was presented to the jury by means of depositions and letters that passed between the parties. Nothing would be gained by setting out the evidence here, but an examination of the record has convinced us that defendants did not finally breach the contract until August 16, 1930. On this date the defendants advised plaintiff that they could not use the sugar and could not find any buyer for the sugar. Up to that time the correspondence had been such as to cause plaintiff to believe that eventually defendants would take the sugar at the contract price. There is ample evidence to justify the jury in reaching the conclusion that plaintiff sold the sugar at the first opportunity after August 16, 1930, and for the best price obtainable.

The next error of which defendants complain is that the court erred in rejecting evidence offered by defendants of the price of raw sugar. The proffered testimony was as to the market price of raw sugar during the months of May, June, July, August and September, 1930. The court refused to admit it because it did not refer to the price of grade-N and grade-S sugar. Some correspondence is referred to where the parties spoke of "raw sugar" and did not refer to grades. In the correspondence, however, which constitutes the contract, the two grades are referred to. Defendants argue that what was meant was simply raw sugar and that the designation "grade-N" and "grade-S" did not mean any difference in quality. The answer to this argument is that in the contract there is a difference in price of a quarter of a cent. The fact was established by plaintiffs that this was a by-product of the sugar mills, being what is known as second run sugars, and the grade depends on the extent to which a particular lot has been subjected to the refining process.

Defendants next argue that the trial court erred in refusing to

submit to the jury the defense that the contract was rendered impossible of performance by the act of the agents of the federal government. The evidence offered was to the effect that the prohibition agents had prohibited defendants from receiving any sugar. The fact is that the proffered evidence would not have proved that the contract was impossible of performance. It would only have shown that its performance had been rendered unprofitable or difficult. The latter condition is no defense to a suit for nonperformance of the contract.

In *City of Topeka v. Industrial Gas Co.*, 135 Kan. 646, 11 P. 2d 1034, this court considered such a question. In that case a gas company accepted an ordinance whereby it agreed to construct a gas main from Amarillo, Tex., to Kansas City, Mo., a distributing system in Topeka, and a line connecting the line from Amarillo, Tex., to Kansas City, Mo., with the distributing system in Topeka. The company was unsuccessful in obtaining a certificate to do business in Kansas City, Mo., and, therefore, refused to construct the distributing system in Topeka. When sued on its performance bond the company contended the city knew of the necessity for the certificate as to Kansas City and that they were each dependent on the other. This court said:

"It is fundamental that the performance of a contract will not be excused merely because its performance turns out to be hard and improvident or less profitable or unexpectedly burdensome. . . . This question was dealt with in the case of *Drug Supply Co. v. Board of Administration*, 106 Kan. 256, 187 Pac. 701. In that case the promisor endeavored to escape performance of a contract on account of having gone into the hands of a receiver. The court said: 'Generally, when one contracts to do a thing possible in itself he will be liable for breach of such contract, notwithstanding the occurrence of a contingency which, although not foreseen by him or within his control, but which might have been provided against, has put it out of his power to perform.' In the present case it can hardly be said that it was beyond the power of the gas company to perform. It is only unprofitable. (See, also, *Winfrey v. Automobile Co.*, 113 Kan. 343, 214 Pac. 781.)" (p. 651.)

In the case of *Winfrey v. Automobile Co.*, 113 Kan. 343, 214 Pac. 781, the fourth syllabus reads:

"Where one agrees to perform an act possible in itself he will be liable for breach thereof although contingencies not foreseen by him arise which make it difficult or even beyond his power to perform and which might have been provided against in the agreement."

What was said in those cases applies with equal force here. Had defendants cared to provide for nonliability under the contract in

case the prohibition officials rendered it unprofitable, they could have done so. There was nothing about the evidence offered that tended to prove any issue in the case or to establish any defense.

Defendants next argue that the trial court erred in allowing the jury to return a verdict based on the difference in market price of the sugar, plus storage, interest and carrying charges. The argument is that since the court fixed the date of the breach of the contract, the defendants were not liable for any carrying charges up to that date. The theory upon which the court allowed storage and carrying charges from May 16 is that in order to be prepared to comply with the contract in case defendants gave the shipping order it was necessary the sugar be set aside, and held. That was the correct theory. The additional storage and carrying charges were caused by the action of defendants already discussed in causing plaintiff to be uncertain from May 15 to August 16, whether they would finally fulfill the contract. From that time on the plaintiff was looking for a buyer for the sugar, and the carrying charges were incidental.

Other points argued in the brief have been examined and are held not to be good.

We see no error in this record, and the judgment of the trial court is affirmed.