No. 48,022

ARTHUR DESBIEN, STANLEY DESBIEN and EUGENE DESBIEN, and LOREN JOHNSON and LEON STEPHEN, and C. N. CLARK and RUSSELL PENNINGTON, *Appellees*, v. PENOKEE FARMERS UNION COOPERATIVE ASSOCIATION, *Appellant*.

(552 P. 2d 917)

Opinion filed July 23, 1976.

*Jack N. Stewart*, of Hampton, Royce, Engleman and Nelson, of Salina, argued the cause, and *Robert F. Glassman*, of Hays, was on the brief for the appellant.

*Allen Shelton*, of Clark and Shelton, of Hill City, argued the cause, and was on the brief for the appellees, Arthur Desbien, Stanley Desbien, and Eugene Desbien, and C. N. Clark and Russell Pennington.

*Randall W. Weller*, of Jones and Weller, of Hill City, argued the cause, and was on the brief for the appellees, Loren Johnson and Leon Stephen.

The opinion of the court was delivered by

PRAGER, J.: This appeal involves three cases filed by seven wheat farmers against the defendant-appellant, Penokee Farmers Union Cooperative Association, for breach of seven contracts for the purchase of wheat. Because the same basic issues of fact and law

were involved in the actions, they were consolidated in the district court for purposes of trial and they have been consolidated on this appeal.

In case No. 8206 in the district court the plaintiffs-appellees are Arthur Desbien, Stanley Desbien, and Eugene Desbien. We will refer to them as the Desbiens. The plaintiffs-appellees in case No. 8211 are Loren Johnson and Leon Stephen. In case No. 8213 the plaintiffs-appellees are C. N. Clark and Russell Pennington. All of the plaintiffs are voting members of the Penokee Coop. The Coop among its other activities provides a market for wheat grown by the plaintiffs and other wheat farmers in the area. The Coop has in excess of 1200 voting members and operates grain elevators in Hill City, Bogue, and Penokee, Kansas. Clair Summers is the general manager of the Coop and is in charge of all three elevators. Charles Knipp is the manager of the Bogue elevator.

During the year 1973 Penokee Coop entered into contracts with various farmers for the purchase of the farmer's wheat at a price specified in the contract subject to adjustments for higher or lower market grades. During 1973 the Coop had difficulty in transporting purchased grain to market because of the shortage of railroad cars to ship the grain. In most instances the farmers entered into contracts with the Coop for the sale of their wheat at the time of harvest or shortly thereafter and in each of the cases involved here the plaintiff sold his wheat at a price substantially less than the market price for wheat which later developed. According to the evidence each wheat farmer had the option of contracting for payment for his wheat by the Coop either during 1973 or deferring payment until the calendar year 1974 for income tax purposes. Each of the plaintiffs selected the deferred payment contract so that payment for his wheat would be in 1974. Because of the difficulties in transportation of the wheat to terminal markets, the deferred payment contract was also of benefit to the Coop. The inability of the Coop to deliver wheat promptly to the terminal markets caused it to have a shortage of money for making payments to the individual farmers.

This litigation arose because of certain provisions contained in each wheat-purchase contract pertaining to the time of payment for the wheat by the Coop. The contract as drawn was ambiguous and it is understandable how the parties could have a bona fide dispute as to its meaning. All of the contracts entered into by the

seven plaintiffs were essentially the same. Each contained three clauses concerning the time of payment which were somewhat contradictory. These provisions were as follows:

(1) "It is . . . agreed that the Owner shall receive payment for this grain only after shipment is made to terminal markets."

(2) "Payment for grain shall be determined by the Purchaser on the basis of the date order of contracts on file with the Purchaser, the oldest outstanding contract receiving priority of payment."

(3) "In consideration of the above agreement of the Owner to sell this grain, it is agreed between the Owner and the Purchaser that the Owner is to receive payment for this grain on ＿＿＿＿＿＿, 19＿＿."

In each contract the specific date on which payment for the wheat was to be made was handwritten in the printed form by Charles Knipp, the Coop's Bogue elevator manager. The contracts of Stanley Desbien, Eugene Desbien, Loren Johnson, C. N. Clark, and Russell Pennington all provided that the owner was to receive payment for grain on January 1, 1974. Arthur Desbien's contract called for payment "on/or January 31, 1974." Leon Stephen's contract provided that payment was to be made "after 1-1-74."

Each contract provided for a date for completion of shipment by the purchaser. The three Desbien contracts provided for a shipment date of March 31, 1974. The contracts of Clark, Pennington, Johnson, and Stephen each provided for a shipment date of January 31, 1974. It is important to note that each contract provided for a payment date prior to the date for completion of the shipment of wheat by the purchaser. These contractual provisions raised questions as to how the contracts should be construed. Under each contract when was the individual farmer to be paid for his wheat—on the designated payment date or not until the grain was actually shipped to a terminal? Furthermore a question arose whether a farmer was entitled to be paid on January 1, 1974, or other payment date indicated, even though the individual farmer had not yet delivered his grain to the elevator. It was these questions which brought about the lawsuit between the farmers and the Coop.

The contentions of the opposing parties should be noted. The Coop took the position that each of the contracts should be construed to require the Coop to pay each individual farmer the contract price of his grain only after delivery of the grain by the farmer to the Coop elevator and after shipment of the grain by the Coop to terminal markets after the "delivery date" specified in each con-

tract. Each of the farmers maintained that the contract meant just exactly what it said—that they were to be paid by the Coop for their wheat on January 1, 1974, or other payment date specified. Relying upon its construction of the contract, the Coop refused and failed to pay the individual farmers on January 1, 1974, or other payment date expressed in the contract. Each of the plaintiffs construed the Coop's failure to make payment on the payment date as a breach of his contract. In February 1974 the seven plaintiffs filed suit against the Coop alleging that the Coop had failed to pay the purchase price when due under the contract. Each of the plaintiffs requested a judgment for rescission of his contract or in the alternative sought damages for breach of contract. The Desbiens' case was filed on February 7, 1974. Approximately one week later Johnson, Clark, Pennington, and Stephen filed similar actions. In each case the Coop filed an answer denying that it had breached its contract. In each of the actions filed by Clark, Pennington, Stephen, and Johnson, the Coop asserted a counterclaim contending that each of those defendants had failed and refused to deliver his wheat to the Coop and that the Coop had suffered damages by reason of breach of contract.

After the cases became at issue, a joint pretrial conference was held. The cases were consolidated for trial and the issues of fact to be determined by the court were stated to be as follows: (1) What are the meanings of these contracts? (2) Have the defendants breached the contracts, and if so, when? (3) Have the plaintiffs, or any one of them, breached the contracts, and if so, when? The original pretrial order was amended to include an additional issue for the court to decide: If there was a breach of contract, what is the measure, amount, and theory of damages, if any? With the cases in this posture they were tried together by the court sitting without a jury.

At the trial the primary witness relied upon by all parties was Charles Knipp, manager of the Coop elevator at Bogue. His testimony was somewhat rambling and frequently contradictory. He was in a difficult position at the trial because obviously his understanding of the intention of the parties to the wheat contract conflicted seriously with the express language used in each contract. The only other testimony offered by the plaintiffs was that of Russell Pennington, Eugene Desbien, and Loren Johnson, all of whom testified as to the price of wheat at the elevators during the

first half of February 1974. The defendant Coop called as witnesses Clair Summers, general manager of the Coop and Charles Knipp. Following the trial, the district court made extensive findings of fact and conclusions of law and held generally in favor of all plaintiffs against the Penokee Coop. The trial court found among other things that the Coop had breached its wheat-purchase contract in each instance by failing to make payment to the particular plaintiff on the payment date provided under his particular contract. The court also found that each of the plaintiffs was ready, willing, and able to comply with his obligations under his contract and that he was not at fault. In addition to finding a breach of contract, the trial court held that the defendant had been guilty of conversion of each plaintiff's wheat and awarded damages to each plaintiff on a theory of conversion, based upon the value of the plaintiff's wheat, as of the date of the filing of his petition in February 1974. The trial court also entered judgment in favor of the plaintiffs, Johnson, Stephen, Clark, and Pennington, on the Coop's counterclaim.

The Penokee Coop has appealed to this court challenging numerous findings of fact and conclusions of law made by the trial court. The defendant Coop has raised 20 points on appeal in cases No. 8206 and 8313 and nine additional points in case No. 8211. All of these various points have been logically grouped and presented to the court under three categories: (1) Errors pertaining to construction of the contracts; (2) errors pertaining to the findings of the court relating to the performance or breach of the contracts; and (3) errors pertaining to the damages awarded to each plaintiff. At the outset it is important to recognize that there are two distinct types of transactions involved in these cases. First, the three contracts involving Stanley, Eugene, and Arthur Desbien show on their face that the wheat being purchased by the Coop was already delivered and in the Coop elevator at the time of execution of each contract. In each of the Desbien contracts there is set forth the storage charge due to the Coop from the date the wheat was delivered to the elevator up to the date of the contract. The second type of transaction involves the contracts of Johnson, Clark, Pennington, and Stephen. None of these four plaintiffs ever actually delivered his wheat to the Coop elevator and delivery had not been made at the time of trial or at the time the case was argued on appeal in June 1976. In resolving the issues raised on this appeal, it is necessary that we keep in mind this distinction between the Desbien contracts and the contracts of the other four plaintiffs.

The first basic point of error raised on the appeal by the Penokee

Coop is that the trial court erred in construing each of the contracts to require the Coop to make payment for the wheat on the "payment date" specified in each contract. On this point we have concluded from a careful consideration of the language of the contracts and the testimony presented at the trial, that there is substantial competent evidence to support the findings of the trial court that the Penokee Coop was required under each contract to pay each individual plaintiff for his wheat on January 1, 1974, except Arthur Desbien whose contract had a payment date of January 31, 1974. In our judgment the trial court correctly applied the recognized rules for the construction of contracts applicable in cases of ambiguity. Where the provisions of a written instrument are clear and unambiguous, there is no occasion for applying rules of construction. (*Fast v. Kahan,* 206 Kan. 682, 481 P. 2d 958, 62 A. L. R. 3d 1157.) Here however, an examination of each of the contracts involved reveals a sufficient ambiguity and conflict in provisions to justify the use of the established rules of construction.

In construing each contract we must look to the contract as a whole and interpret it so as to ascertain the intention of the parties and to give effect to that intention, if it can be done consistently with legal principles. (*Garvey Center, Inc. v. Food Specialties, Inc.,* 214 Kan. 224, 519 P. 2d 646.) Another rule of construction is that an ambiguous contract will be construed strictly against the party who drew or prepared it and liberally toward the other party. (*First National Bank of Lawrence v. Methodist Home for the Aged,* 181 Kan. 100, 309 P. 2d 389; *Green v. Royal Neighbors of America,* 146 Kan. 571, 73 P. 2d 1.) It is undisputed in this case that the printed form of contract was prepared by the Coop and that the blank spaces in the printed form were filled in by Charles Knipp, the Coop's assistant manager. Furthermore, where part of a contract is printed and part of a contract is handwritten or typed by filling in blanks in the printed form, handwritten or typed words will control over the printed part. (*Hickey v. Dirks,* 156 Kan. 326, 133 P. 2d 107; *Nance v. Mullikin,* 131 Kan. 828, 293 Pac. 490.) This rule of construction has also been adopted in K. S. A. 84-3-118 which states specifically that "handwritten terms control typewritten and printed terms, and typewritten control printed." In ambiguous contracts where there is uncertainty between the general and the specific provisions relating to the same thing, the specific provisions ordinarily qualify the meaning of the general provisions, the reason-

able inference being that the specific provisions express more exactly what the parties intended. (*Smith v. Russ*, 184 Kan. 773, 339 P. 2d 286.) In each contract now before us a specific payment date, January 1, 1974, or January 31, 1974, is handwritten in the printed form, and under these rules of construction, it should control the more general provisions contained in the printed form.

One other rule of construction should be considered. Where the terms of a contract are ambiguous, but such terms have been construed and acted upon by the parties themselves, such construction will be adopted, even though the language used may more strongly suggest another construction. (*Brick Co. v. Bailey*, 76 Kan. 42, 90 Pac. 803.) At the trial of this action Charles Knipp, although inconsistent at times, testified as to his understanding in regard to the date of payment which was placed in each contract. Concerning the contract entered into between the Coop and Stanley Desbien, Knipp testified in substance that at the time the contract was entered into on the 10th day of August, there was a doubt that the Coop would have that grain shipped by the 1st of January on account of the rail situation but they went ahead and drew up the contract. The Coop knew they were in trouble getting cars and thought maybe by then some relief would be in sight and the Coop could probably-or-possibly get it out by the 1st of January. On that basis a payment date of January 1, 1974, was written into the contract. In regard to the provision in the contract that payment was not to be made until the wheat had been delivered at the terminal, Mr. Knipp freely admitted that the Coop did not keep track of whose wheat was shipped to the terminal markets. Because all of the wheat received from the various farmers is commingled, Knipp had no way of knowing whose wheat had been shipped and whose hadn't. Applying the rules for construction of ambiguous contracts and considering the testimony in the record, it is clear to us that the trial court had a substantial evidentiary basis for its conclusion that each of the contracts should be construed so as to require the Penokee Coop to pay to each one of the farmer plaintiffs the amount due for his wheat on the payment date specified in each contract. We cannot say that the trial court erred in construing each contract in this manner.

The second basic point raised by the Penokee Coop on this appeal is that the Coop did not fail to perform or breach its contract with each individual plaintiff. Having concluded under the first

point that the payment date written into each contract was binding upon Penokee Coop, it becomes quite obvious that the Coop breached each of the seven contracts by its failure to make payment for the wheat on the specified payment date. In regard to the three Desbiens, their wheat had already been delivered to the Coop elevator at the time each contract was executed. Each of the Desbiens had fully performed his part of his contract and all that remained to be done was for the Coop to pay for the wheat on January 1, 1974, the date of payment prescribed in the Stanley Desbien and Eugene Desbien contracts, and on January 31, 1974, the date of payment specified in the Arthur Desbien contract. Since the Coop did not make payment to each of the Desbiens on the date payment was to be made under his contract, it is clear that the Penokee Coop breached each of the Desbien contracts.

The situation involving the contracts of Clark, Johnson, Pennington, and Stephen is complicated by the fact that none of those plaintiffs delivered his wheat to the Coop prior to the payment date. This raised an issue as to the willingness of each of these four plaintiffs to perform under his contract. The trial court found that Knipp never informed or instructed these four plaintiffs to deliver their wheat to the Coop elevator. There is some conflict on this point in the record but there is evidence in the record to support this finding by the trial court. There is also substantial evidence that these plaintiffs frequently asked Knipp if they should deliver their wheat and Knipp told them that they could but that the Coop did not have sufficient money to pay them for the wheat. We believe there is evidence to establish that each of these four plaintiffs (Clark, Pennington, Johnson, and Stephen) was ready, willing, and able to perform under his contract. The Coop on the other hand was not ready to perform and never did perform by tendering payment on the payment date. Under the circumstances we cannot say that the trial court erred in concluding that the Coop had breached these contracts by failing to make payment for the wheat on the date specified in each contract.

The third point raised on the appeal is that the trial court erred in the amount of damages which it awarded to each plaintiff in this case. The district court concluded that the Penokee Coop converted the wheat of each of the plaintiffs and awarded each plaintiff damages based on a theory of conversion for the market price of the wheat on the day of the conversion, which varied as between the individual plaintiffs depending upon the date demand

was made for payment of the wheat. We have concluded that the district court was in error in finding that the Coop had wrongfully converted the wheat of the plaintiffs and in using the measure of damages which it applied in the case. Under this point we will consider separately the three contracts made by the Desbiens where the plaintiffs had delivered the wheat to the Coop elevator at the time it was sold to the Coop. We will then consider the measure of damages applied by the court in the cases involving Clark, Pennington, Johnson, and Stephen where the farmer plaintiffs never did deliver the wheat to the Coop elevator.

We shall first consider whether the trial court erred in finding that the Coop wrongfully converted the wheat of the three Desbiens. We have concluded that no conversion of the Desbiens' wheat took place. A conversion has been defined as an unauthorized assumption and exercise of the right of ownership over goods or personal chattels belonging to another. (*Nelson v. Hy-Grade Construction & Materials, Inc.*, 215 Kan. 631, 527 P. 2d 1059; *Watkins v. Layton*, 182 Kan. 702, 324 P. 2d 130.) In this case the evidence was undisputed that the three Desbiens sold to the Coop the wheat which had previously been placed by them in the Coop elevator for storage. Each contract of sale provided that payment should be made for the wheat at the agreed price on a later specified payment date in January 1974 and further provided for the payment of storage charge from the time the wheat was placed in the elevator for storage until the date of the contract. We have no hesitancy in holding that the Penokee Coop was not guilty of a conversion of any wheat belonging to the Desbiens. The Desbiens clearly had no right of action for conversion against the Coop for the reason that, after they sold their grain to the Coop, none of them had title to the grain or a right to possession of the grain. When the purchase contracts were signed, delivery of the grain by the Desbiens to the Coop had already been completed. Under established principles of law, title to the grain passed from the Desbiens to the Coop immediately upon execution of the wheat-purchase contracts. In regard to the passing of title on the sale of personal property under these circumstances, K. S. A. 84-2-401 provides in pertinent part as follows:

"84-2-401. Passing of title; reservation for security; limited application of this section.

·  ·  ·  ·  ·  ·  ·  ·  ·  ·  ·  ·  ·  ·  ·

"(3) Unless otherwise explicitly agreed where delivery is to be made without moving the goods,

·  ·  ·  ·  ·  ·  ·  ·  ·  ·  ·  ·  ·  ·  ·

"(*b*) if the goods are at the time of contracting already identified and no documents are to be delivered, title passes at the time and place of contracting."

In this case the evidence is undisputed that the Desbiens as sellers had completed performance with reference to the physical delivery of the goods. The goods had already been identified, were in the possession of the Coop, and no additional documents were required to be delivered. Hence title to the wheat passed at the time and place of contract. The Coop in this case could not be guilty of conversion of the Desbiens wheat. The Coop commingled the Desbiens' wheat with wheat of its own and that of other customers in the elevator with the full knowledge and consent of the Desbiens. Following execution of the contract and the passing of the title of the wheat to the Coop, the Desbiens had no ownership or right of possession in the wheat which they had sold the Coop. Under the circumstances the plaintiffs Desbien failed to show a conversion of their wheat by the Coop. (*McDowell v. Geist,* 134 Kan. 789, 8 P. 2d 372; *Stewart v. Produce Co.,* 88 Kan. 521, 526, 129 Pac. 181.)

The mere fact that the defendant Coop did not pay to the Desbiens the purchase price for their wheat on the agreed date of payment did not make the Coop guilty of a conversion of the wheat, since the wheat was sold on credit with payment to be made months after the sale took place. (*Lewis v. Metcalf,* 53 Kan. 217, 36 Pac. 345.) The Desbiens under the contract were entitled to be paid for their wheat on the agreed day of payment, January 1, 1974, in the case of Stanley and Eugene Desbien or January 31, 1974, the date of payment specified in the contract of Arthur Desbien. When a buyer of personal property fails to pay the agreed purchase price when due the seller may recover the agreed price of the goods with interest from the date payment was due until the proper amount is actually tendered to the buyer. (K. S. A. [Weeks 1965] 84-2-709.) The record before us discloses that, following the filing of the first action by the Desbiens, the Coop on February 8, 1974, tendered a check in the amount of $5,088.48 to Stanley Desbien and a check in the amount of $23,850.13 to Eugene Desbien. On February 9, 1974, the Coop tendered a check to Arthur Desbien in the amount of $19,577.86. In each case it is

undisputed that the check tendered was the full amount to be paid under the contract on the agreed payment date. Because the Coop breached the Desbien contracts by failing to pay the contract price on the date due, each of the Desbiens is entitled to recover interest at the rate of six percent per annum on the amount of the purchase price from the date payment was due to the time the Coop's check was tendered. With reference to the Desbiens actions for breach of contract, the judgments of the district court should be reversed with directions to the trial court to enter judgment in favor of each of the Desbiens in the following amounts: Stanley Desbien, interest at six percent per annum on $5,088.48 from January 1, 1974, until February 8, 1974; Eugene Desbien, interest at six percent per annum on $23,850.13 from January 1, 1974, until February 8, 1974; Arthur Desbien, interest at six percent per annum on $19,577.86 from Januray 31, 1974, until February 9, 1974.

We will now consider whether the district court applied the proper measures of damages in the four cases involving plaintiffs Clark, Pennington, Johnson, and Stephen. In each of these cases the plaintiff alleged that he had offered to perform under his contract by hauling his wheat to the Coop elevator but that the Coop had refused to perform by making payment when due and that the contract should be held to be ineffective and unenforceable. It is undisputed that each of these plaintiffs at all times had and still has possession of his wheat. The Penokee Coop never had possession of this wheat at any time. Simply stated, these plaintiffs contend that the Coop was guilty of a constructive conversion of the wheat because the Coop under its contract of purchase asserted title and a right to possession of the wheat and that such assertion of ownership constituted a conversion of the wheat. We do not agree. The Coop never had possession of the wheat and never at any time actually interfered with the individual farmer's possession of his wheat.

Professor William L. Prosser in his Law of Torts, 4th Ed., Ch. 3, p. 93, concludes that a mere assertion of ownership of personal property does not constitute a conversion of the property. He states:

"The gist of conversion is the interference with control of the property. It follows that a mere assertion of ownership, without any disturbance of possession, or any other interference with the right to it, is not sufficiently serious to be classed as conversion. A sale, an advertisement for sale, or a

purchase of the chattel by one who has no right to it, while the owner's possession remains undisturbed, does not make the defendant a converter. . . ."

In support of his position Professor Prosser relies on *Hein v. Marcante et al.,* 57 Wyo. 81, 113 P. 2d 940; *Irish v. Cloyes & Morse,* 8 Vt. 30; *Jenkins v. Holly,* 204 Ala. 519, 86 So. 390; *Knowles v. Knowles,* 25 R. I. 464, 56 A. 775; *Dietzman v. Ralston Purina Co.,* 246 Or. 367, 425, P. 2d 163. He also cites *Richstein v. Roesch,* 71 S. D. 451, 25 N. W. 2d 558, 169 A. L. R. 98, which held that the filing and foreclosure of a purported mechanic's lien was not a conversion where there was no actual interference with the owner's dominion over or rights in property. For a more recent case see *Martin v. Sikes,* 38 Wash. 2d 274, 229 P. 2d 546, where the subject of conversion by assertion of title is discussed in depth and the court concluded that a mere threat is insufficient to constitute a conversion and that there must be a disseisin of the property or some actual interference with possession to constitute a conversion. Counsel for the plaintiffs have not cited any cases in point to the contrary. We, therefore, must conclude from the undisputed evidence that the Coop was not guilty of a conversion of the wheat of Clark, Pennington, Johnson or Stephen.

The trial court held, however, that the Coop by failing to pay the purchase price when due breached the contracts. Under the circumstances the correct measure of damages to be applied was the difference between the market price at the time and place for tender and the unpaid contract price. In some cases incidental damages are also recoverable but they are not involved in this case. This measure of damages is adopted in K. S. A. 84-2-708 and by a number of Kansas cases prior to the enactment of the Uniform Commercial Code. (*Neiswender v. Bolen,* 113 Kan. 271, 214 Pac. 96; and *Rock v. Gaede,* 111 Kan. 214, 207 Pac. 323.) It should also be noted that under K. S. A. 84-2-703, where the buyer breaches a sales contract by failing to make payment when due on or before delivery, a seller may retain possession of the goods and resell them and recover damages from the buyer where the sale price of the wheat was less than the purchase price provided for under the contract. (*International T. & R. Corp. v. Benscheidt,* 141 Kan. 416, 41 P. 2d 737; *Hayes v. Cardwell,* 107 Kan. 556, 192 Pac. 757.)

The difficulty of the position of the four plaintiffs (Clark, Pennington, Johnson, and Stephen) in this case is that none of them

suffered any damages as a result of the breach of the contract by Penokee Coop because the market price of wheat at the time the Coop breached the contracts was nearly double the contract price. Each of these plaintiffs actually benefitted from the breach of contract by the Coop and should have immediately resold the wheat at the higher price when the Coop refused to pay them. In its judgment the trial court awarded each of these plaintiffs damages based upon a theory of conversion and directed each plaintiff to deliver his wheat to the defendant's elevator after the judgment was paid by the Coop. As pointed out above the measure of damages used was erroneous. Each of the four plaintiffs (Clark, Pennington, Johnson, and Stephen) has possession of the wheat which was to have been sold to the Penokee Coop under each contract. Although none of these four plaintiffs suffered actual damages when the Coop breached its contract, each of these plaintiffs was and still is entitled to resell whatever wheat he has in his possession at the best possible price available and to retain the amount received from such sale.

We have considered the arguments offered by the plaintiffs in their brief that the Coop, having failed at the trial to object to plaintiffs' evidence of the market value of the wheat, waived any objection to the theory or measure of damages applied by the court in this case. We cannot agree. The measure and amount of damages was specifically made an issue at the pretrial conference and we find nothing in the record to show that counsel for the Coop misled the court or in any way invited or acquiesced in the court's theory that damages should be based on conversion of the wheat. We find this argument without merit.

Finally we affirm the trial court in its judgment refusing to award damages to Penokee Coop for breach of contract by the plaintiffs Clark, Pennington, Johnson, and Stephen. Since the Coop breached its contract, it cannot recover from them on the contract. We have considered the additional points raised in the briefs of all of the parties and have concluded that each of them is without merit and need not be considered in this opinion. The points which we have decided are determinative of the appeal. The judgment of the district court is reversed and remanded to the district court with directions to enter judgment in accordance with the conclusions set forth in this opinion.