No. 29,508.

THE BENTON GRAIN COMPANY, *Appellant*, v. B. F. REGER and N. J. YOUNG, Partners doing business as REGER & YOUNG, *Appellees*.

(293 Pac. 955.)

Opinion filed December 6, 1930.

*Albert Watkins, Arthur C. Scates,* both of Dodge City, *Harold Payne,* of Kinsley, and *E. W. Davis,* of Liberal, for the appellant.

*John A. Etling* and *A. L. Moffat,* both of Kinsley, for the appellees.

The opinion of the court was delivered by

HUTCHISON, J.: This is an action by the Benton Grain Company, with main office in Kansas City, Mo., and branch office in Dodge

City, Kan., to recover damages of defendants Reger & Young, grain dealers at Kinsley, Kan., for breach of a contract to sell and deliver plaintiff 10,000 bushels of wheat.

Plaintiff alleges the contract was made by conversation over the long-distance telephone on June 29, 1929, and confirmed immediately thereafter by letters mailed defendants from the branch office and the main office, under the general and well-established custom existing in the grain trade.

The answer admits the partnership alleged, but denies generally all other allegations.

The verdict and judgment are for the defendants, and plaintiff appeals, assigning errors in the exclusion of evidence offered by plaintiff, the refusal to direct a verdict for plaintiff, giving and refusing to give certain instructions and overruling the motion for a new trial.

W. M. Patterson, manager of the branch office of the plaintiff at Dodge City, Kan., testified that he had several conversations with defendant Reger over the telephone on the 27th, 28th and 29th of June, 1929, concerning the purchase of wheat for the plaintiff and did purchase from defendants 10,000 bushels of wheat for $1.08 per bushel to be delivered by July 15. He further testified that Myrle Hart, who was soliciting advertising for "The Dodge City *Journal,*" was in the office while he was engaged in the conversation with defendant Reger over the telephone and heard his part of the conversation. She was called as a witness by the plaintiff and stated that she was in the office three days in succession when Mr. Patterson was talking over the telephone to some one at Kinsley, and after being asked several qualifying questions as to her ability to give the import of the conversation on the part of Mr. Patterson she was asked to state what he said, to which question the court sustained the objection of the defendants as being incompetent and immaterial. Two of the preliminary questions and answers were as follows:

"Q. Did you hear his end of the conversation, A. Yes, sir. I didn't pay strict attention to it; I could not tell you all that was said; I was waiting to talk to him, really not there to hear his conversation.

"Q. Can you give the general import of that conversation? A. No, I could not."

Later she was recalled and asked:

"Q. Do you recall the conversation of Mr. Patterson's in any of the conversations on that day?"

To which she answered:

"A. I recall the substance of the conversation, but I think it is impossible for anyone to recall the exact words."

She was then asked, "What is the substance?" The court sustained the objection that she had not shown herself qualified to answer. If the answer she gave to the last qualifying question had stood alone it might have shown her fully qualified to give the substance of such conversation, but the court had heard her disqualifying answers to the two questions above set out and other similar ones which it had a right to consider in connection with the last answer, and when considered together we cannot say the court should have overruled the objection and held her to have been qualified to give the substance or import of Mr. Patterson's end of the conversation. We have reached this conclusion on the theory that if she had shown herself qualified the testimony would have been competent without taking into consideration the further objection of the appellees that she did not know with whom the conversation was had. This matter was also presented to the court on the hearing of the motion for new trial when the affidavit of this witness was filed, stating what her testimony would have been and would be, if permitted to testify, the essential portion being as follows:

". . . that she heard Mr. Patterson's end of the telephone conversation, and knows from his conversation over the telephone that he finally succeeded in buying the wheat . . ."

This was certainly not a statement of facts but a conclusion of the witness upon the very question being tried by the jury, and was not competent. Appellant cites *Smith v. Eggleston Oil Co.*, 117 Kan. 619, 232 Pac. 870, in support of the competency of opinion evidence when there is none better, but the situation is not parallel. There no direct evidence was capable of being introduced. Here positive evidence was introduced on both sides of the proposition, and opinion evidence was improper and incompetent. (*Root v. Packing Co.*, 88 Kan. 413, 129 Pac. 147; *Insurance Office v. Woolen-mill Co.*, 72 Kan. 41, 82 Pac. 513.)

The second assignment of error is in the refusal of the court to admit the ticker-tape records offered in evidence by the plaintiff, after showing that the main and branch offices of the plaintiff were connected by wire and all transactions are sent over the telegraph typewriter and printed on a tape which is pasted on a sheet of paper

and maintained as the office record. There were seven of these offered and held inadmissible, exhibit No. 7 being as follows:

"JUNE 29, 1929.

"Cort book 10,000 Reger and Young your bid 1.08 1 H. W. 15 days shipment 1 cent premium 12 protein 1 cent up or down ¼ per cent protein 1 cent scale down per lb. test down to 56. D. C. OK.

"We booked Reger and Young wheat. KC.

" 'Booked see letter confirming. CT.' "

The objection to their admission, which was sustained by the court, was that they were incompetent, irrelevant and immaterial, self-serving and not binding on the defendants. These were certainly communications between principal and agent, self-serving and in no way binding on the defendants, but appellant urges that because they were office records they were competent under R. S. 60-2869, and cites *Supply Co. v. Case,* 116 Kan. 520, 227 Pac. 257, and *Priddy-Maer Elevator Co. v. Wenzel,* 120 Kan. 423, 243 Pac. 1016. The statute provides that such writings are admissible in evidence when they are intended as records of sales or purchases, not that they are admissible to determine the issue of whether or not a sale or purchase was in fact made. It was said in *Supply Co. v. Case,* supra: "The issue being as to the amount of wheat delivered, it was not error to admit entries in a book made at the time of the transaction." (Syl.) The other case above cited involved the amount of commission due the broker, which depended upon the number of pounds of seed handled at five cents per hundred.

In the case of *Royce v. Insurance Co.,* 107 Kan. 245, 191 Pac. 581, where the court excluded the minutes of a corporation relating to a proposition that plaintiff should work for defendant on a commission basis instead of a salary, for which he had sued, it was held:

"The minutes of a corporation may be offered in evidence in controversies between members of a corporation or against a corporation, but not in favor of it as against third parties. The plaintiff was a stranger to the defendant corporation and had nothing to do with the writing of the minutes, and the defendant could not bind him by what they entered in their books. As against him, the recitals in the minutes were self-serving declarations and not admissible in evidence." (p. 249.)

See, also, *Trust Co. v. Loving,* 71 Kan. 558, 81 Pac. 200.

The distinction is that such records might be admissible to determine the amount, or price involved or some similar detail, but certainly not to establish a disputed fact as to the existence of a contract between the parties.

Appellant contends that the trial court should have sustained its application for a directed verdict because the defendants did not dispute the existence of a general custom that a written confirmation mailed immediately after a telephone conversation in the grain trade became a binding contract if not objected to within a reasonable time. Such a custom was plead and established by the evidence, and it was shown that such a confirmation had been mailed to defendants in the usual manner. Knowledge of a general custom is sometimes presumed on the part of one engaged in that particular line of business, but it is only presumed and not conclusive. The evidence of one of the defendants was that he was a beginner in the grain business, having started in the enterprise in April previous to this conversation in June. His testimony with reference to the confirmation and such custom, in answer to a question if he had ever heard of it before, was "I never received one, never heard of it."

At most the custom might be so notorious as to furnish a presumption of knowledge. The court in this case so instructed, and we think correctly. That presumption of knowledge was possibly rebutted, if the jury believed the answer of one of the defendants given above. Neither was the confirmation used in this case in connection with the custom for the purpose of settling some details or omissions in the oral contract. It was used to corroborate the plaintiff's testimony as to the existence of an oral contract. In the case of *Mc-Sherry v. Blanchfield*, 68 Kan. 310, 75 Pac. 121, it was said:

"In order that it may be binding, a custom or usage must be known to the party sought to be charged, or must be so notorious that knowledge of it will be presumed.

"Usage or custom cannot make a contract when parties themselves have made none.

"The proper office of usage or custom is to explain technical terms in contracts to which peculiar meanings attach; to make certain that which is indefinite, ambiguous or obscure; to supply necessary matters upon which the contract itself is silent; and generally to elucidate the intention of the parties when the meaning of the contract cannot be clearly ascertained from the language employed." (Syl. ¶¶ 1, 2, 3.)

The same rule was followed in another grain case, *Strong v. Ringle*, 96 Kan. 573, 152 Pac. 631, to the effect that such a custom was not to make a contract, but to elucidate one already made.

The relation of the defendants in this case was very different from that of the defendant in the case of *Cardwell v. Uhl*, 105 Kan. 249, 182 Pac. 415, in which it was said:

"Where there is evidence of a practice among grain dealers, which had been followed in prior transactions between the parties, to mail letters of confirmation of oral contracts, such confirmations are admissible in corroboration of testimony that oral contracts to which they refer were made." (Syl. ¶ 3.)

The dispute there was as to the time of delivery in the oral contracts, not that there had never been any contracts made, and there the custom had been used and followed by both the parties in previous transactions. The court admitted evidence of the custom to corroborate the testimony that the particular oral contracts referred to by the plaintiff had been made.

The case of *Strong v. Thurston*, 107 Kan. 368, 191 Pac. 575, is hardly in point, for there the defendant admitted the existence of an oral contract, but attempted to avoid the effect of the confirmation on the ground that it expressed different provisions and terms.

With the testimony of one of the defendants denying a knowledge of the custom urged by the plaintiff, and denying the existence of any oral contract whatever over the telephone, we think the case was a proper one to be submitted to the jury, and not one for the direction of a verdict for plaintiff by the court.

The errors assigned by appellant with reference to the giving and refusing to give instructions and overruling the motion for a new trial have been partly considered already in this opinion, the principal complaint as to the instructions being directed to the inclusion therein of knowledge of the defendant as to a custom before it would be binding. We find no error in this respect, nor in the giving of the instructions; neither do we find error in overruling the motion for a new trial.

The judgment is affirmed.