No. 50,522

PHILLIP EUGENE WENDLING, *Appellee,* v. TED PULS and GEORGE WATSON, *Appellants.*

(610 P.2d 580)

Opinion filed May 10, 1980.

*Theodore G. Geisert,* of Geisert & Heer, of Kingman, argued the cause and *Kenneth R. Heer,* of the same firm, was with him on the brief for the appellants.

*Robert D. Myers,* of Speir, Stroberg & Sizemore, of Newton, argued the cause and was on the brief for the appellee.

The opinion of the court was delivered by

HERD, J.: This is a civil action to recover damages for breach of an oral contract for the purchase and sale of cattle. The case was tried to the court which rendered judgment for the plaintiff-appellee seller in the amount of $14,755.02.

This controversy arose out of the following facts: Phillip Eugene Wendling, a Harvey County farmer and stockman, met Ted Puls, an active cattle buyer, in July, 1973, at the Central Livestock Sale in Hutchinson. Wendling indicated to Puls he might have some cattle for sale around the middle of August, 1973. Puls asked Wendling to call him when he decided to sell.

On August 13, 1973, Wendling called Puls and informed him he had 103 head of cattle for sale. Puls associated himself with George Watson, a veterinarian, for financial assistance and on August 14, 1973, the two drove to Wendling's farm and inspected the cattle. As a result of negotiation, the parties agreed on a price of 61 cents per pound for 98 head and 59 cents per pound on the remaining 5 head. The cattle were to be officially weighed August 16, 1973, on Puls' trucks with 3% off for shrinkage. At the time of the agreement, Watson gave Wendling his check for $1000 as a down payment on the cattle with the notation thereon "103 cattle." Wendling deposited the check on August 20, 1973.

On August 16, 1973, Puls went to Wendling's farm and requested an additional week to take delivery. Wendling granted the additional week, providing the same terms and conditions applied. Puls assured him they did.

Wendling rounded up the cattle and penned them on August 23, 1973, in preparation for delivery pursuant to the agreement but the defendants neither appeared, sent trucks, nor called. Wendling attempted to telephone Puls, but was advised Puls was putting up hay. He then called Watson who said he didn't know

why delivery hadn't been taken but he would check with Puls. Finally on August 27, 1973, Wendling reached Puls by telephone and demanded an explanation. Puls stated he was still working on his problem of finding a place to put the cattle. Wendling requested additional down payment and Puls refused and suggested that maybe he should sell the cattle to someone else. Wendling told Puls he would need a written release before he was free to negotiate another sale. Puls made no response to the release suggestion. On August 28, 1973, Wendling sought legal advice and was advised he should obtain a written release from Puls and Watson before reselling the cattle. The next day Wendling could not locate Puls but was able to talk to Dr. Watson. Wendling requested Watson and Puls meet him at his lawyer's office to give him a release so he could sell the cattle. They did not appear at the law office as requested, leaving Wendling uncertain as to their intentions.

Thereafter, on September 11, 1973, Wendling caused the following notice to be served on both men:

"Gentlemen:

This is to notify you, Ted Puls and George Watson, D.V.M., individually and jointly that I the undersigned, Phillip Eugene Wendling, at 10:00 a.m., on the 21st day of September, 1973, at the Farmers Coop Elevator, at Halstead, Kansas, will consider you to have breached the contract entered into with me unless on or before said date and time, you fulfill the terms of said contract entered into on the 14th day of August, 1973, at my farm in Harvey County, Kansas, which contract was as follows:

"You did purchase for cash and were to take delivery of 103 head of feeder cattle on August 16, 1973, at 7:30 a.m. on your trucks at my farm in Harvey County, Kansas and pay for the same in cash after the same were weighed on the trucks at the scales in Halstead, Kansas, as follows:

"98 head at $61.00 per cwt; 5 head at average weight at $59.00 per cwt; all at 3% shrinkage, which cattle at your later requests made from time to time and for your convenience, I have in good faith continued to hold and feed for your convenience awaiting for your compliance with said contract; and I will on the date at the time and place stated above, cause said cattle to be weighed and cause the same to be appraised and a fair market price of said cattle to be established at said time and place and will thereafter pursue such remedies for the breach of said contract as are afforded to me under the uniform commercial code, as provided by the statutes of the State of Kansas.

Phillip Eugene Wendling"

Neither Puls nor Watson responded to the notice. Wendling proceeded to comply with the terms of the notice. He weighed the

cattle on September 21, 1973. They weighed 85,540 pounds. Wendling asked three qualified livestock dealers to make a bid on the cattle that same day. The market was so unstable on that date only one of the buyers made an offer. He bid 42 cents per pound. Applying the 3% shrinkage provided in the contract, the net weight for sale was 82,974 pounds. At 42 cents a pound, the total selling price on September 21, 1973, would have been $34,849.08 compared to $50,533.50 as a selling price applying the original contract terms to the same weight. The $50,533.50 contract amount does not include the $1000 down payment paid by defendants on August 14, 1973. Wendling later actually sold the cattle for $39,978.49 in two lots on October 18, 1973, and November 1, 1973.

The trial court held the question of the statute of frauds was not a problem in the case because the parties had admitted through testimony the existence of the agreement, its terms and conditions. They disagreed only on the significance of the $1000 down payment. The court held the seller in this case had a right to retain the down payment and apply it toward his damages. In addition, he held if the down payment was inadequate to cover all of his damages, Wendling could bring an action to recover his excess damages.

The court further held the tendency of modern authority was that time is not ordinarily of the essence in a contract unless made so by stipulation or unless that intent is manifested by the parties. The court found that time was not of the essence in the contract for sale between the parties in this case. The court found that plaintiff's actions in holding the cattle for the defendants beyond the August 23, 1973, delivery date and

"in electing to forestall the declaration of a breach of the contract in an attempt to secure the performance of the defendants thereto, were reasonable and it was proper under the circumstances for plaintiff to set a reasonable time in which defendants were required to complete the contract; that the September 21, 1973, date set by plaintiff for defendants to complete the contract was reasonable; that September 21, 1973, is a proper date upon which to measure plaintiff's damages for breach of the contract by the defendants."

The court found defendants breached the contract when they failed to take delivery of the cattle on or before September 21, 1973. Plaintiff's damages were computed, pursuant to K.S.A. 84-2-708, to be the difference between the

"contract price computed as to the weight of the cattle on September 21 ($50,533.59) and the fair market value of the cattle on that date ($34,849.08), plus plaintiff's incidental damages incurred in the way of freight costs ($70.51), but less the amount of the down payment tendered by the defendants ($1,000.00)."

The trial court found the seller was not under a resale obligation and the fact that he did later resell the cattle did not bear on his ability to elect his damage remedy pursuant to K.S.A. 84-2-708. Plaintiff was granted judgment against defendants in the amount of $14,755.02, plus interest and costs. Appellants Puls and Watson appeal.

Appellants' first issue pertains to a construction of K.S.A. 84-2-708. They question whether the statute permits the seller to select a tender of delivery date where the contract is uncertain and treat the selected date for fixing damages upon the buyer's failure to respond. In raising the issue, appellants admit the contract of sale, its terms and the proposed delivery date. The Uniform Commercial Code is to be liberally construed (K.S.A. 84-1-102) and every duty within the act imposes an obligation of good faith in its performance. (K.S.A. 84-1-203). K.S.A. 84-1-204 provides that a reasonable time for taking action depends on the nature, purpose and circumstances of such action. K.S.A. 84-2-703 provides:

"**Seller's remedies in general.** Where the buyer wrongfully rejects or revokes acceptance of goods or fails to make a payment due on or before delivery or repudiates with respect to a part or the whole, then with respect to any goods directly affected and, if the breach is of the whole contract (section 84-2-612), then also with respect to the whole undelivered balance, the aggrieved seller may

"(a) withhold delivery of such goods;

"(b) stop delivery by any bailee as hereafter provided (section 84-2-705);

"(c) proceed under the next section respecting goods still unidentified to the contract;

"(d) resell and recover damages as hereafter provided (section 84-2-706);

"(e) recover damages for nonacceptance (section 84-2-708) or in a proper case the price (section 84-2-709);

"(f) cancel."

## K.S.A. 84-2-708(1) provides:

"**Seller's damages for nonacceptance or repudiation.** (1) Subject to subsection (2) and to the provisions of this article with respect to proof of market price (section 84-2-723), the measure of damages for nonacceptance or repudiation by the buyer is the difference between the market price at the time and place for tender and the unpaid contract price together with any incidental damages provided in this article (section 84-2-710), but less expenses saved in consequence of the buyer's breach."

It is clear the correct measure of damages is "the difference between the market price at the time and place for tender and the unpaid contract price." *Desbien v. Penokee Farmers Union Cooperative Association,* 220 Kan. 358, 369, 552 P.2d 917 (1976). See *Neiswender v. Bolen,* 113 Kan. 271, 214 Pac. 96 (1923); *Rock v. Gaede,* 111 Kan. 214, 207 Pac. 323 (1922). Appellants argue the *Desbien* case supports their contention the delivery date agreed upon by the parties, August 23, 1973, is the correct date from which to measure damages.

Giving K.S.A. 84-2-708(1) a liberal construction in the absence of any evidence of bad faith, did the nature, purpose and circumstances of this case justify Wendling's act of setting the tender date as of September 21, 1973? We believe that action was proper in this case. Wendling advised Puls and Watson he did not feel free to sell the livestock without a written release. Appellants made no response. Wendling advised Watson of a proposed meeting of all parties, to be held in his lawyer's office for the purpose of obtaining a written release. Neither appellant replied and neither appeared at the appointed time. Wendling then sent the notice on September 11, 1973, to both appellants fixing the "tender" date at September 21, 1973, giving appellants 10 days to respond. They again chose to make no response. At that time the contract was not clearly in breach and the delivery date remained uncertain. "(1) Tender of delivery requires that the seller put and hold conforming goods at the buyer's disposition and give the buyer any notification reasonably necessary to enable him to take delivery." K.S.A. 84-2-503(1). The Official Comment following this section of the Code states: " 'tender' connotes such performance by the tendering party as puts the other party in default if he fails to proceed in some manner." Considering the letter and spirit of the Code, we find appellee's actions were made in good faith and were commercially reasonable under the nature and circumstances of this case. The damages were properly set as of September 21, 1973.

Appellants' second issue is as follows: After Wendling accepted and cashed a down payment check of $1000, can he claim damages in excess of that sum in light of K.S.A. 84-2-718 or in light of the custom and usage in the cattle trade?

Appellants argue custom and usage in the livestock industry considers all down payments on livestock purchase contracts to

be liquidated damages, thereby eliminating the need for a specific agreement.

We held in *McSherry v. Blanchfield,* 68 Kan. 310, 75 Pac. 121 (1904), that custom and usage cannot be shown to create a contract where none existed, but rather its use is restricted to the explanation of technical or trade terms in a contract. This court went on to point out that it must first be shown either that the other party had knowledge of such a custom or that the knowledge among those in the business or industry was so notorious as to furnish a presumption that the other party had knowledge of it. These principles have often been applied. See *Shepard v. United States Fidelity & Guaranty Co.,* 210 Kan. 652, 504 P.2d 228 (1972); *Jukes v. North American Van Lines, Inc.,* 181 Kan. 12, 309 P.2d 692 (1957); *Radio Station KFH Co. v. Musicians Ass'n. Local No. 297,* 169 Kan. 596, 220 P.2d 199 (1950); *Peoples Ice & Fuel Co. v. Dickey Oil Co.,* 145 Kan. 351, 65 P.2d 319 (1937); *Benton Grain Co. v. Reger,* 131 Kan. 735, 293 Pac. 955 (1930).

In *Radio Station KFH Co. v. Local No. 297,* 169 Kan. at 603, we discussed the standard of proof required in custom and usage cases as follows:

"The requisites of a good custom must all be established by evidence which is clear and convincing."

The trial court found the evidence of custom and usage was insufficient to show such a custom exists in the cattle trade. We find the appellants failed to meet the required standard of proof and we will not disturb the trial court's findings and conclusions of law as to this issue.

K.S.A. 84-2-718 provides parties to a sales contract may agree to a reasonable amount of liquidated damages in the event of breach. That statute states:

"**Liquidation or limitation of damages; deposits.** (1) Damages for breach by either party may be liquidated in the agreement but only at an amount which is reasonable in the light of the anticipated or actual harm caused by the breach, the difficulties of proof of loss, and the inconvenience or nonfeasibility of otherwise obtaining an adequate remedy. A term fixing unreasonably large liquidated damages is void as a penalty.

"(2) Where the seller justifiably withholds delivery of goods because of the buyer's breach, the buyer is entitled to restitution of any amount by which the sum of his payments exceeds

"(a) the amount to which the seller is entitled by virtue of terms liquidating the seller's damages in accordance with subsection (1), or

"(b) in the absence of such terms, twenty percent of the value of the total performance for which the buyer is obligated under the contract or $500, whichever is smaller.

"(3) The buyer's right to restitution under subsection (2) is subject to offset to the extent that the seller establishes

"(a) a right to recover damages under the provisions of this article other than subsection (1), and

"(b) the amount or value of any benefits received by the buyer directly or indirectly by reason of the contract.

"(4) Where a seller has received a payment in goods their reasonable value or the proceeds of their resale shall be treated as payments for the purposes of subsection (2); but if the seller has notice of the buyer's breach before reselling goods received in part performance, his resale is subject to the conditions laid down in this article on resale by an aggrieved seller (section 84-2-706)."

Appellants argue "if the contract provides for a down payment but not for liquidation of damages, this section [K.S.A. 84-2-718] in effect liquidates them." Appellants argue they are entitled to a refund of their down payment in excess of $500, except that Wendling can offset any damages he proves he has the right to recover. Appellants claim that Wendling may take only $952.70. They arrive at this figure by subtracting $500 (they claim Wendling would keep $500 of the original $1000, pursuant to K.S.A. 84-2-718[2][b]), from $1452.70, a figure they claim represents the true difference between the market price on the date of delivery and the contract price. They measure the date of delivery from August 23, 1973, rather than September 21, 1973. We do not agree with this construction of K.S.A. 84-2-718. First, there is no written agreement between the parties regarding the amount of liquidated damages to be recovered in the event of breach by the parties. The down payment check itself does not serve as a clear agreement and there is no evidence the parties intended it to indicate a firm agreement regarding damages. Second, we agree that where a seller withholds delivery of the goods because of a buyer's breach, the buyer is entitled to restitution of his down payment, pursuant to K.S.A. 84-2-718(2)(*a*), or, in the absence of an agreement, pursuant to the formula set forth in K.S.A. 84-2-718(2)(*b*). The appellants seem to have overlooked, however, the next section of the statute which states the buyer's right to restitution is subject to offset to the extent the seller establishes "(*a*) a right to recover damages under the provisions of this article other than subsection (1)." The seller in this case has his remedy under K.S.A. 84-2-708. The entire down payment must be applied

to the amount recovered pursuant to that statute. In this case, we have already determined the date upon which to base the seller's damages. That date is September 21, 1973, rather than August 23, 1973. Therefore, appellants' proposed recovery formula will not stand. This issue is without merit.

Finally, appellants contend the Statute of Frauds controlled by K.S.A. 84-2-201 precludes enforcement of this contract. K.S.A. 84-2-201 provides:

"**Formal requirements; statute of frauds.** (1) Except as otherwise provided in this section a contract for the sale of goods for the price of $500 or more is not enforceable by way of action or defense unless there is some writing sufficient to indicate that a contract for sale has been made between the parties and signed by the party against whom enforcement is sought or by his authorized agent or broker. A writing is not insufficient because it omits or incorrectly states a term agreed upon but the contract is not enforceable under this paragraph beyond the quantity of goods shown in such writing.

"(2) Between merchants if within a reasonable time a writing in confirmation of the contract and sufficient against the sender is received and the party receiving it has reason to know its contents, it satisfies the requirements of subsection (1) against such party unless written notice of objection to its contents is given within ten days after it is received.

"(3) A contract which does not satisfy the requirements of subsection (1) but which is valid in other respects is enforceable

"(a) if the goods are to be specially manufactured for the buyer and are not suitable for sale to others in the ordinary course of the seller's business and the seller, before notice of repudiation is received and under circumstances which reasonably indicate that the goods are for the buyer, has made either a substantial beginning of their manufacture or commitments for their procurement; or

"(b) if the party against whom enforcement is sought admits in his pleading, testimony or otherwise in court that a contract for sale was made, but the contract is not enforceable under this provision beyond the quantity of goods admitted; or

"(c) with respect to goods for which payment has been made and accepted or which have been received and accepted (section 84-2-606)."

This is a specious argument. Not only have all the parties frankly and openly admitted the existence of the contract during trial testimony, with complete agreement on price, quantity of purchase and date of delivery, but the seller served a written notice on buyers containing all the terms and conditions of the contract, to which buyers offered neither written nor oral objections. The requirements of K.S.A. 84-2-201(3)(b) are met.

We find no error and the judgment of the trial court is affirmed.