**Brian McRAE, d/b/a McRae and Associates, Plaintiff,**

v.

**PUBLICATIONS INTERNATIONAL, LTD., Defendant.**

**No. 97–1055–JTM.**

United States District Court, D. Kansas.

Nov. 19, 1997.

Jeffrey L. Willis, Johnson, Kennedy, Dahl & Willis, Wichita, KS, Gary D. McCallister, Gary D. McCallister & Assoc., Ltd., Chicago, IL, Ernest McRae, Wichita, KS, for Plaintiff.

Timothy J. Finnerty, Wallace, Saunders, Austin, Brown & Enochs, Chartered, Wich-

ita, KS, Wayne B. Giampietro, Witwer, Poltrock & Giampietro, Chicago, IL, for Defendant.

## MEMORANDUM AND ORDER

MARTEN, District Judge.

Brian McRae sued Publications International, Ltd. (PIL) for breach of a contract to supply 687,140 children's ten-button sound books. PIL was closing out its inventory. McRae claims the defendant breached the contract by failing to supply 178,977 of the books by October 15, 1995. McRae also claims PIL breached a "right of first refusal" clause when it failed to offer to sell him 148,023 additional books which became available during the contract term.

McRae moved for summary judgment on the question of whether the contract was breached when the defendant repudiated the contract on August 17, 1995, or alternatively, when the defendant failed to supply the required quantity of books on October 15, 1995. McRae also moved to exclude evidence of offers to settle the dispute made after the date of the alleged breach and the testimony of the defendant's expert witness on the commercial reasonableness of the settlement offers.

The court granted both motions in a brief order. In addition, the court dismissed as duplicative McRae's claim for damages based on an alleged breach of a right of first refusal clause. PIL filed a motion to reconsider. This order addresses the rationale for the court's decisions and PIL's motion to reconsider.

## I. Facts.

On May 11, 1995, McRae sent a purchase order to PIL for 687,140 ten-button sound books at a cost of $2.00 each for a total consideration of $1,374,280 F.O.B. at PIL's warehouse. The purchase order was to be financed by a ninety-day letter of credit issued by McRae. McRae was not to take immediate delivery of the books. McRae was to provide PIL with shipping instructions and PIL was to send the books directly to McRae's customers. All of the sound books were to be removed from PIL's warehouse by October 15, 1995. The contract called for McRae to pay a storage fee for each pallet left in the warehouse after June 1, 1995. McRae asserts that this fee was paid.

The inventory identified to the purchase order was initially contained in a May 4, 1995 fax. The fax reflected a quantity for different titles totaling 687,140 books. In the initial discussions with Mr. Girolamo of PIL, McRae indicated the goods would be used as fourth quarter product and that potential customers would want the product in their stores in October and November. PIL admits McRae indicated the books were fourth quarter product, but asserts that the agreement contained no requirement that the books be available for delivery or shipment in October or November. PIL also asserts that McRae had received no orders from any potential customers.

In early June 1995, Girolamo notified McRae there were 62,853 fewer books available than were specified in the contract. On August 17, 1995, McRae claims he learned of the potential breach when PIL drew less than the full amount remaining on the letter of credit which was to expire by its own terms on that date.

On August 23, 1995, McRae wrote to Girolamo placing him on notice regarding the inventory shortage and stating that he expected to draw out a total of 687,140 books by October 15, 1995. On August 25, 1995, McRae wrote to Bob Stanik, former President of PIL, inquiring about the inventory shortages. On August 29, 1995, McRae wrote to Louis Weber, Chairman of PIL, confirming inventory shortages of 227,000 books and complaining about the negative impact of the shortage on his sales. PIL admits McRae wrote to Weber, but disputes the statements contained in the letter regarding the impact of the shortage on McRae's sales. McRae also had numerous phone conversations with officials of PIL between August 17, 1995 and the end of the month.

On August 29, 1995, PIL offered to substitute 167,300 children's sound books of a dif-

ferent format for $1.00 each. McRae rejected this offer.

On August 30, 1995, McRae wrote to Weber requesting PIL prepare a letter to McRae's customers with regard to the inventory shortages. On August 31, 1995, PIL wrote a letter explaining that the shortage of approximately 200,000 books was not McRae's fault. McRae wrote to Weber again on August 31, 1995. PIL denies the truth of the content of the letter.

McRae did not withdraw all the inventory by October 15, 1995, but withdrew all the stock on hand in late October and early November. McRae claims he sought a 45-day extension of time for removing the inventory but that PIL refused to agree to an extension unless McRae agreed to relinquish all other claims made in connection with the purchase of the inventory. McRae further claims that he attempted to withdraw all the inventory by October 15, but that PIL failed to timely furnish information necessary for him to make the shipping arrangements.

The purchase order contained the following term: "McRae & Associates reserves the right to renegotiate this purchase order should any significant variations occur in the inventory contained herein." McRae never invoked this provision and continued to try to sell the books which he believed were available to him.

On February 23, 1996, PIL informed McRae that it could deliver an additional 40,000 books immediately, 70,000 more on April 1, 1996, and an additional 60,000 books on May 15, 1996, for a total of 170,000 books. McRae contends the offer was made during settlement negotiations.

## II. The Motion for Summary Judgment.

McRae argues he is entitled to summary judgment on his claim that the defendant failed to supply 178,977 of the books by the October 15, 1995, deadline. McRae argues the contract was breached on August 17, 1995, when PIL failed to draw on the letter of credit for the full amount due under the contract. McRae argues that, at the latest, the contract was breached on October 15,

1995, when PIL failed to make 178,977 of the books available for delivery.

■ PIL argues that McRae is not entitled to summary judgment because the contract failed to specify that time was of the essence and that the offer of delivery in February, April, and May of 1996 was commercially reasonable. PIL cites K.S.A. 84–1–204 and *Wendling v. Puls*, 227 Kan. 780, 610 P.2d 580 (1980), as well as cases from other jurisdictions. K.S.A. 84–1–204 provides as follows:

**Time; reasonable time; "seasonably".**

(1) Whenever this act requires any action to be taken within a reasonable time, any time which is not manifestly unreasonable may be fixed by agreement.

(2) What is a reasonable time for taking any action depends on the nature, purpose, and circumstances of such action.

(3) An action is taken "seasonably" when it is taken at or within the time agreed or if no time is agreed at or within a reasonable time.

It is undisputed that the purpose of the contract was for PIL to supply McRae with product for resale in the fourth quarter of 1995. PIL's offer to supply the missing product in February, April, and May of 1996 is unreasonable, given the purpose of the contract and the circumstances of the case.

■ PIL argues McRae breached the contract when he failed to pick up all the available inventory on October 15, 1995. Assuming for purposes of summary judgment that PIL is not responsible for McRae's inability to comply, the court finds that removing the inventory in late October and early November 1995 was timely under the contract and did not constitute a breach of the contract by McRae given the purpose of the contract and the circumstances of this case. In any event, McRae's primary performance under the contract was to pay for the books. PIL does not suggest that McRae failed to tender payment in a timely fashion.

Turning to the cases PIL cites, *Wendling* does not support PIL's position that the offer of delivery in 1996 was reasonable under the circumstances. In *Wendling*, the defendants agreed to purchase cattle from the plaintiff

on August 16, 1973. The defendants were to send trucks to the plaintiff's ranch to pick up the cattle. On August 16, the defendants asked for an additional week to take delivery and the plaintiff agreed to the extension. On August 23, the defendants failed to pick up the cattle or otherwise contact the plaintiff.

The plaintiff contacted one of the defendants, who suggested he should sell the cattle to someone else. The plaintiff asked for a release, but the defendants failed to respond. On September 11, 1973, the plaintiff notified the defendants that he would consider them to be in breach of the agreement if they did not perform by September 21, 1973. When the defendants failed to do so, the plaintiff sought damages based on the difference between the market price on September 21, 1973 and the contract price.

The defendants argued that it was unreasonable for the plaintiff to set September 21, 1973 as the date of the breach. The Kansas Supreme Court disagreed, finding the plaintiff's actions were commercially reasonable under the circumstances of the case. *Wendling,* 227 Kan. at 785, 610 P.2d 580. In *Wendling,* the non-breaching party extended the deadlines with notice in an attempt to save the contract. Here, PIL is attempting to rely on a belated offer of performance, made well after breach and at a time when the parties were contemplating litigation, in order to avoid liability for its breach of the contract.

In *Mercanti v. Persson,* 160 Conn. 468, 280 A.2d 137 (1971), the agreement provided no deadline for performance, thus the court refused to hold performance on a certain date to be unreasonable. Here the agreement clearly contemplates performance in the fourth quarter of 1995, not the first half of 1996. In *BAII Banking Corp. v. Atlantic Richfield Co.,* 86 Civ. 6651, 1993 WL 403963 (S.D.N.Y. October 7, 1993), *affirmed,* 28 F.3d 103 (2nd Cir.1994) (table), no date or method was specified for delivery of certain cargo. The delivery was expected in December 1985 but was moved to January 1986 for the convenience of the defendant. *BAII Banking* appears to hold this modification was reasonable and that it did not relieve the defendant of liability for a later repudiation. Here,

McRae did not seek to modify delivery to 1996.

In *Olsen v. Scholl,* 38 Ill.App.3d 340, 347 N.E.2d 195 (1976), sellers of soybeans failed to deliver the beans in January 1973, as called for in the contract. The buyer had the option of delaying acceptance, but did not exercise this option. The buyer filed suit on February 16, 1973 and covered on February 27, 1973. The sellers argued the breach occurred at the latest on January 31, 1973, thus using the cover price on February 27, 1973 was unreasonable. The court applied Illinois law and interpreted the contract as one where delivery is extended to an indefinite time. It held the measure of damages was the difference between contract price and market price a reasonable time after performance was demanded. Here, McRae demanded performance when he told PIL he expected to take delivery on October 15, 1995, and when he took delivery of the available books. In any event, the parties were contemplating litigation well before PIL's belated offer to supply the books.

■ PIL also raises questions about McRae's damages. Whether or not McRae can prove damages is a question of fact for the jury. It has no impact on whether PIL breached the contract when it failed to provide 178,977 books for sale in the fourth quarter of 1995.

McRae's motion for partial summary judgment is granted with respect to the defendant's liability on his claim that the defendant breached the contract when it failed to tender 178,977 books on or about October 15, 1995. The exact date of the breach and the appropriate damages are questions for the jury.

In the motion to reconsider, PIL argues the fact that the exact date of the breach remains a question for the jury means that whether a breach occurred is a question for the jury. The court's reference to the jury determining the exact date of the breach was for the purpose of calculating damages under K.S.A. 84–2–713. This statute provides for the determination of damages on the date the buyer learns of the breach. The jury will be asked to determine that date. The jury is

not being asked to determine the date performance was due under the contract. The court has already found performance was due on or about October 15, 1995 and that an offer of performance in February, April and May 1996 was not commercially reasonable.

■ PIL next suggests that "course of dealing," "usage of the trade" and "course of performance" somehow modified the contract. Course of dealing only applies where the contract at issue is one of a series of similar contracts. PIL fails to cite any course of dealing during prior contracts between the parties, if any such prior contracts existed. PIL fails to cite any evidence in support of its claim that usage of the trade somehow modifies the agreement. To avoid summary judgment, PIL must do more than rely on vague arguments of counsel. In any event, K.S.A. 84–1–205(4) provides that express terms control over usage of trade when construing the contract in accordance with the usage of the trade would be unreasonable. The court has already determined that delivery in 1996 was not reasonable.

■ With regard to course of performance, PIL suggests that K.S.A. 84–2–208 raises a question of fact on the issue of breach. This statute provides in relevant part as follows:

(1) Where the contract for sale involves repeated occasions for performance by either party with knowledge of the nature of the performance and opportunity for objection to it by the other, any course of performance accepted or acquiesced in without objection shall be relevant to determine the meaning of the agreement.

The problem with this argument is that McRae objected when it became apparent that PIL would not be furnishing the required quantity of books by October 15, 1995. PIL's other arguments for reconsideration were considered by the court before the initial decision was rendered. The motion for reconsideration is denied.

III. The Motion in Limine.

McRae seeks to exclude evidence relevant to whether the defendant's offer to supply books in 1996 was commercially reasonable.

Because the court has ruled as a matter of law that the offer was not commercially reasonable and that a breach occurred, this evidence is not relevant to any question before the jury. This is a sufficient reason to grant McRae's motion. The court notes that the motion would have been granted in any event. The offer of settlement and the expert report will be addressed in turn.

■ The offer was made in the context of settlement negotiations. The reason the evidence was being offered was to show that PIL had not breached the agreement. In other words, PIL is attempting to show McRae's claim is invalid. Rule 408 provides that offers of settlement are not admissible to "prove liability for or invalidity of the claim."

PIL first argues there was no valuable consideration in the offer and thus Rule 408 does not apply. PIL claims it was already obligated to supply the books under the contract. However, where the contract had already been breached the offer to supply books in settlement was a valuable consideration. In addition, PIL had itself filed a lawsuit, which it offered in coy language to abandon if a resolution of the dispute could be worked out between the parties.

■ PIL next argues Rule 408 does not exclude evidence offered to negate a contention of undue delay. The purpose of this exception is to allow a party to negate a contention of undue delay in presenting a claim. The purpose is not to allow a party to extend indefinitely the time for complying with its contractual obligations.

■ With regard to the expert witness, PIL does not dispute that the Robert Stanik's supplemental report was untimely. PIL argues that McRae suffers no prejudice. Early in the proceedings the court advised the parties that the provisions of Rule 26 regarding expert witnesses would be strictly enforced. Trial by ambush will not be permitted. Stanik will be permitted to testify regarding opinions offered in his initial expert report, but may not testify as to any opinion expressed for the first time in his untimely supplemental report.

McRae's motion in limine is granted.

PIL moved to reconsider, primarily on the ground that Rule 408 is not meant to exclude a party's evidence that it made an offer of settlement. PIL cites no Tenth Circuit authority on this point and the court declines to adopt such a rule under the circumstances of this case. As previously noted, the evidence is no longer relevant to any issue before the jury because the court has granted summary judgment on the question of liability.

PIL suggests for the first time that it will offer the evidence to show McRae failed to mitigate his damages. This is evidence going to the amount of McRae's claim, and is expressly excluded under Rule 408. In addition, the court has held that the offer to supply books in February, April and May of 1996 was commercially unreasonable. If the offer was commercially unreasonable, McRae cannot be taken to task for refusing to accept it.

Finally, PIL suggests the evidence may become relevant to show bias or prejudice of a witness at trial. PIL may seek permission from the court to offer excluded evidence if developments at trial warrant a modification of the order. However, PIL must seek such permission before offering the evidence. The motion to reconsider is denied.

IV. Right of First Refusal Claim.

 McRae alleges that PIL failed to offer him the right of first refusal on 148,023 books that became available during the contract period. Assuming that PIL indeed received 148,023 books during the contract period, PIL was already under an obligation to furnish these books to McRae. McRae does not allege that PIL had 148,023 books more than the amount PIL was originally obligated to supply under the contract and admits that PIL was short 178,977 books. Accordingly, any damages related to the failure to offer McRae books under the right of first refusal clause would be duplicative of damages awarded under the failure to supply clause.

 McRae argues that PIL had parts available from which it could manufacture books to meet the original shortfall, thus any additional books returned to PIL should be considered as books available above and beyond the contract amount. The court will not read into the contract a requirement that PIL manufacture additional books to meet the initial contract amount, where the purpose of the contract was to close out the inventory.

Accordingly, McRae's claim for damages based upon a breach of the right of first refusal clause is dismissed because any damages awarded under this clause would be duplicative of damages awarded because of PIL's failure to supply 178,977 books under the contract, on which the court has granted McRae summary judgment as to liability.